OPINION
{¶ 1} Michael D. Smyth appeals from a judgment of the Montgomery County Court of Common Pleas, which found him guilty of possession of crack cocaine. Smyth had pled no contest after the trial court overruled his motion to suppress evidence.
 {¶ 2} On the afternoon of June 25, 2002, police officers were attending a community meeting at the Southwest Priority Board office in the West Town shopping center in Dayton when their meeting was disrupted by very loud music coming from a passing van. The van parked in a nearby parking lot, and two men exited the vehicle to enter a sporting goods store. Lieutenant Mike Tenore and Sergeant Chris Weber left the meeting to issue the driver a citation for loud music. From the office lobby, two priority board employees pointed out to the police officers the man who had been driving the van. This man was Michael Smyth.
 {¶ 3} By the time the officers approached the sporting goods store, Smyth and the other man were coming out. The officers identified themselves and asked about the loud music. Smyth initially denied that he had been driving the van, but when the police challenged this assertion, he admitted that he had been the driver. Smyth did not have a driver's license or any other identification with him. The officers called for a patrol car, intending to use its computer to verify Smyth's identity and to see if there were any outstanding warrants for his arrest. Once the patrol car arrived, Weber did a pat-down search for weapons on Smyth because the officers intended to place him in the back of the car. As the search progressed, Smyth "blurted out" that he had some "dope" in his pocket. Simultaneously, Weber removed a "fairly large rock of crack cocaine" from Smyth's front pants pocket. Tenore placed Smyth under arrest. Then, when Tenore asked Weber whether he had any reagent with him to test the suspected drug, Smyth stated that there was no reason to test it, "it [was] good."
 {¶ 4} Smyth was indicted for possession of crack cocaine in an amount greater than five grams but less than ten grams in violation of R.C. 2925.11(A). He pled not guilty and filed a motion to suppress the statements he had made to the police on the grounds that they had not been knowingly and voluntarily made. He later expanded the motion to seek the suppression of the physical evidence against him on the ground that it had been unreasonable for the police officers to order him into the cruiser and to conduct a pat-down search of his person.
 {¶ 5} A hearing was held on October 18, 2002. After the hearing, the trial court overruled the motion to suppress. Smyth subsequently pled no contest to possession of cocaine. He was convicted and sentenced to one year in jail and a one year suspension of his driver's license to run concurrent with any other driver's license suspension.
 {¶ 6} Smyth raises one assignment of error on appeal.
 {¶ 7} "The court erred by overruling defendant's motion to suppress the evidence discovered through his illegal search and seizure by the dayton police officers."
 {¶ 8} The officers claimed that they patted Smyth down for their own safety because they were about to put him in the back of a patrol car. Smyth argues that the officers did not have a valid reason for putting him in the patrol car, and therefore they did not have a valid basis for the pat-down search.
 {¶ 9} "Typically, to conduct a pat-down search for weapons, an officer must have a `specific and articulable' belief based on the `reasonably prudent man' standard that an individual is armed and dangerous." State v. Lozada, 92 Ohio St.3d 74, 75, 2001-Ohio-149, citingTerry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 1880, 1883,20 L.Ed.2d 889. However, the supreme court has recognized that the driver of a motor vehicle may be subjected to a brief pat-down search for weapons even without suspicion of criminal activity where the officer has a lawful reason to detain the driver in a patrol car. State v. Evans,67 Ohio St.3d 405, 410, 1993-Ohio-186. The court has concluded that "[t]he state's obligation not to violate the individual's Fourth Amendment rights does not command that the police officer forsake reasonable precautionary measures during the performance of his duties."Id. In the context of a routine traffic stop, however, the court has held that it is unreasonable for an officer to search a driver for weapons before placing him or her in a patrol car if the sole reason for placing the driver in the patrol car during the investigation is for the convenience of the officer. Lozada, 92 Ohio St.3d at 76. To allow such a procedure "would effectively eviscerate the Terry standard" by permitting the officer, as a matter of routine during a traffic stop, to order a driver out of his car, to order the driver to sit in the patrol car, and then to frisk the driver for weapons before allowing the driver into the patrol car. Id. at 76-77. See, also, State v. Armstrong, Montgomery App. No. 19512, 2003-Ohio-1054.
 {¶ 10} Thus, the key issue in Smyth's case is whether the officers had a lawful reason to ask him to sit in the patrol car. Smyth claims that they did not; he asserts that he was placed in the patrol car only for the convenience of the officers. He notes that there were several officers present, that the encounter occurred during daylight hours, and that he was being cooperative with the police. He contends that the information needed to issue his citations could have been verified without placing him in the patrol car, and thus without subjecting him to a search. The state maintains that the officers did have a lawful basis to ask Smyth to sit in the patrol car: his inability to produce satisfactory identification.
 {¶ 11} In our view, the officers had a lawful basis for placing Smyth in the patrol car due to his inability to produce identification. As the supreme court pointed out in Evans, police have the authority to request the driver of a lawfully stopped motor vehicle to display a driver's license or to furnish satisfactory evidence of licensure. R.C.4507.35; Evans, 67 Ohio St.3d at 409, fn.1. In Lozada, the court — interpreting Evans — stated that Evans had held "that failure to produce a driver's license during a traffic stop is a `lawful' reason for detaining a driver in a patrol car and, consequently, officers may search such a detainee for weapons before placing the driver in the patrol car."Lozada, 92 Ohio St.3d at 77.
 {¶ 12} Officer Tenore stated that Smyth had to be put in the patrol car because he did not have any identification and could have been subject to arrest. (Driving without a license is a first degree misdemeanor. R.C. 4507.02, .99). He also stated that, as a policy, "anytime somebody does not have a driver's license we are required or we are suppose[d] to put them in the back seat of the cruiser and ID them." Officer Weber testified that Smyth was placed in the patrol car as a matter of procedure and to prevent him from fleeing. Although the officers did not emphasize Smyth's lack of identification among the reasons for placing him in the patrol car, Officer Tenore did state this as a reason and it was a lawful one. The fact that the officers may have been able to verify Smyth's identification without placing him in a patrol car does not make their actions unlawful. Because the officers had a lawful reason for putting Smyth in the patrol car, they were justified in conducting a pat-down search.
 {¶ 13} The trial court in its judgment entry and the state in its brief also discuss whether the pat-down search of Smyth exceeded the permissible scope of a pat-down search for weapons. While we do not disagree with the trial court's judgment, we will not address this issue inasmuch as Smyth has not raised it on appeal.
 {¶ 14} The assignment of error is overruled.
 {¶ 15} The judgment of the trial court will be affirmed.
Brogan, J. and Grady, J., concur.