OPINION
{¶ 1} Dwayne Leroy Brown pled no contest to possession of crack cocaine after the Montgomery County Court of Common Pleas overruled his motion to suppress evidence. The trial court found him guilty and sentenced him to a one year term of incarceration.
 {¶ 2} According to the evidence presented at the suppression hearing, at approximately 2:09 a.m. on March 9, 2003, Montgomery County Deputy Sheriff Robert Rosenkranz stopped a vehicle in front of 40 Bluecrest in Dayton, Ohio, because one of the headlights was not working. The car had three occupants — a driver, a front-seat passenger and a rear-seat passenger. Brown was the front-seat passenger. Immediately after the vehicle stopped, the rear-seat passenger exited the vehicle and walked toward the front of the car. After several requests from Rosenkranz, the passenger returned to the vehicle and sat inside of it. Rosenkranz approached the vehicle from the passenger side and asked each of the occupants for his identification. At that time, Rosenkranz observed an open beer can in the backseat area of the car. The deputy returned to his cruiser and ran the identifying information on his computer. The information provided by Brown came back "nothing in file" or it was for a different individual. Rosenkranz requested that other units come to the scene. Sergeant Peter Snyder testified that he had arrived at 2:36 a.m. and Sergeant Jerry McKeish arrived shortly thereafter. (We note that Rosenkranz testified that McKeish had arrived first and that his backup arrived "within minutes, within five minutes, probably.")
 {¶ 3} After the other units had arrived, Rosenkranz approached the vehicle again and asked the individuals to exit the car. The individuals were patted down for weapons and placed in separate cruisers. Brown was placed in Snyder's cruiser. Around this time, a drug-detecting canine conducted a sweep of the stopped car; the dog did not alert to drugs. While in Snyder's cruiser, Brown again provided identifying information. Based on that information, the sergeant learned that there was a juvenile warrant for Brown. Brown was transferred from Snyder's cruiser to Rosenkranz's vehicle for transport to the jail. Immediately after Brown was removed from Snyder's vehicle, Rosenkranz and Snyder checked the seat in Snyder's cruiser for contraband They discovered two "fairly large size rocks of suspected crack cocaine." Neither Rosenkranz nor Snyder gaveMiranda warnings to Brown.
 {¶ 4} On June 20, 2003, Brown was indicted for possession of crack cocaine. He subsequently filed a motion to suppress the drugs and his statements to the police. In his motion, he challenged the lawful nature of the investigatory stop and argued that the statements regarding his identity were made without him being provided the warnings required by Miranda v. Arizona,384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. After a hearing, the trial court overruled the motion, reasoning that the officers had a proper basis to stop the vehicle, that the open container of beer had constituted a crime, that the deputy had a legitimate reason to inquire about the identity of the passengers in the vehicle, and that the officer had a right to determine the actual identity of the passengers when a crime was committed in the car and the information provided by those individuals was apparently incorrect. The court further concluded that once the deputy was aware of the existing warrant, Brown's arrest was proper. Brown subsequently changed his plea to no contest and was found guilty of possession of crack cocaine by the court.
 {¶ 5} On appeal, Brown raises one assignments of error.
 {¶ 6} "The trial court erred to appellant's detriment when it denied the appellant's motion to suppress evidence when the appellant was a passenger in a vehicle pulled over for a headlight being out and the officers did not see any fervent movement by the appellant and did not have any reasonable articulable suspicion that appellant had committed a crime or was committing a crime but still requested identification from him, patted him down and found no weapons, and then put him in the back of a cruiser which he could not get out of unless he broke the glass and subsequently found the drugs that caused appellant to be charged with possession of said drugs; thus, violating appellant's constitutional rights."
 {¶ 7} Although couched as one assignment of error, Brown raises two issues on appeal. First, he contends that "the initial stop of the vehicle was unreasonably and unconstitutionally prolonged and that the searches and detention of Mr. Brown were unconstitutional." Second, he claims that "the questioning of Mr. Brown about his identification was for the sole purpose of incriminating him by obtaining information about a warrant." As discussed, infra, we are not persuaded by either argument.
 {¶ 8} In reviewing the denial of a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. State v. Morgan, Montgomery App. No. 18985, 2002-Ohio-268. "But the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.
 {¶ 9} With regard to his argument that the traffic stop and his detention were unlawful, Brown summarizes his argument as follows: "The Appellant was a passenger who did nothing wrong. First, the officers did not have any reasonable articulable suspicion that the Appellant was engaged in any criminal activity or that he had committed a crime. The Appellant did not make any furtive movement. The Appellant was wrongfully patted down. The canine unit should not have been used. The Appellant [was] wrongfully placed in the back of a cruiser and questioned in an attempt to obtain incriminating evidence and he was not free to leave. In addition, this was a routine traffic stop and the original traffic investigation quickly dissipated and the arresting officers had insufficient evidence to continually detain Appellant for an unreasonably long period. Thus, the continued detention of Appellant violated Appellant's constitutional rights."
 {¶ 10} The state responds that the traffic stop was lawful, because Officer Rosenkranz had probable cause to believe that the driver had committed a traffic violation. The state explains that Rosenkranz routinely gathers identifying information from the driver and all passengers, runs the information through the computer to look for warrants, and then issues either a citation or a warning, depending on the information that results from the computer search. He indicated that the procedure takes approximately fifteen to twenty minutes, and that the identification of Brown occurred within that period of time. The state further argues that "because [Brown] had provided false information about his identity, which raised the suspicions of Officer Rosenkranz and subjected [Brown] to possible arrest, Officer Rosenkranz was entitled to place [Brown] in a cruiser to ascertain his identity for purposes of checking for warrants." The state concludes that the officers had discovered an arrest warrant for Brown, and that the drugs were lawfully found in a search incident to his arrest.
 {¶ 11} The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures.Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889. A traffic stop by a law enforcement officer must comply with the Fourth Amendment's reasonableness requirement. Whren v.United States (1996), 517 U.S. 806, 116 S.Ct. 1769,135 L.Ed.2d 89. A police officer may stop and detain a motorist when he observes a violation of the law, including any traffic offense, and no independent reasonable and articulable suspicion of other criminal activity is required under Terry. E.g., State v.Stewart, Montgomery App. No. 19961, 2004-Ohio-1319, at ¶ 13;Dayton v. Erickson (1996), 76 Ohio St.3d 3, 1996-Ohio-431,665 N.E.2d 1091.
 {¶ 12} We agree with the state that the vehicle was lawfully stopped. It is undisputed that Rosenkranz noticed that the vehicle had only one working headlight. This traffic violation provided probable cause for the deputy to stop and detain the vehicle for the purpose of issuing a warning or a citation for that violation.
 {¶ 13} "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration and vehicle plates. `In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.'" State v. Aguirre, Gallia App. 03CA5, 2003-Ohio-4909, quoting State v. Carlson (1995),102 Ohio App.3d 585, 598-59, 657 N.E.2d 591. The duration of a traffic stop may last no longer than is necessary to resolve the issue that led to the original stop, absent some specific and articulable facts that further detention was reasonable. Statev. Chatton (1984), 11 Ohio St.3d 59, 463 N.E.2d 1237; see Statev. Kerns (Mar. 16, 2001), Montgomery App. No. 18439; State v.Ramos, 155 Ohio App.3d 396, 2003-Ohio-6535, 801 N.E.2d 523.
 {¶ 14} When a lawfully stopped vehicle contains passengers, the Fourth Amendment permits law enforcement officers to detain those passengers for the duration of the lawful detention of the driver. In addition, the Supreme Court has held that, due to concerns for officer safety and the minimal intrusion for the driver and passengers, the officers may order both the driver and the passengers to exit the vehicle. Maryland v. Wilson (1997),519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41. In addition, the officers may request identification from the passengers without running afoul of the Fourth Amendment. As we stated in Morgan,
"[a] request for identification, in and of itself, is not unconstitutional, and is ordinarily characterized as a consensual encounter, not a custodial search. The routine questioning of [the passenger] constituted a minimal intrusion. `Since detention, not questioning, is the evil at issue, it has been held that, so long as the traffic stop is valid, any questioning which occurs during the detention, even if unrelated to the scope of the detention, is valid so long as the questioning does not improperly extend the duration of the detention.'" Id. (citations omitted).
 {¶ 15} Unlike the driver of the vehicle, however, a passenger is neither legally obligated to carry identification nor required to produce it for the law enforcement officers. Morgan, supra. Because the questioning of the passenger is akin to a consensual encounter, the passenger need not respond to the law enforcement officers' request for identification. If, however, the officer has an independent basis for requesting the passenger's identification, such as a reasonable suspicion that the passenger himself has engaged in illegal conduct, the passenger may be required to identify himself and he may be further detained as part of an investigation of that independent offense.
 {¶ 16} "Reasonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or `hunch,' but less than the level of suspicion required for probable cause." State v. Jones (1990), 70 Ohio App.3d 554, 556-557,591 N.E.2d 810, citing Terry, 392 U.S. at 27. We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." Heard, supra,
quoting State v. Andrews (1991), 57 Ohio St.3d 86, 87-88,565 N.E.2d 1271.
 {¶ 17} In Maryland v. Pringle (2003), 540 U.S. ___,124 S.Ct. 795, 157 L.E.2d 769, the United States Supreme Court recently held that the police had probable cause (a more stringent standard than reasonable suspicion) to believe that the front-seat passenger possessed cocaine, either solely or jointly with the driver and the rear-seat passenger, which was found in the rear seat of the vehicle. In that case, the police had conducted a search of a vehicle, with the consent of the driver, and had located $763 of rolled-up currency in the glove compartment and five glassine baggies of cocaine between the folded-up back-seat armrest and the backseat. Pringle, the front-seat passenger, asserted that the police lacked probable cause to believe that he possessed the narcotics behind the rear seat armrest. The Supreme Court rejected Pringle's argument, stating: "We think it an entirely reasonable inference from these facts that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine. Thus a reasonable officer could conclude that there was probable cause to believe Pringle committed the crime of possession of cocaine, either solely or jointly." Id. at 800-01. The Court reaffirmed that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." Id. at 801, citingSibron v. New York (1968), 392 U.S. 40, 62-63, 88 S.Ct. 1889,20 L.Ed.2d 917. However, the Court rejected Pringle's argument that the case presented a "guilty by association scenario," noting that it was reasonable for the officer to infer a common enterprise among the three men and that the amount of money and drugs found in the car suggested drug dealing.
 {¶ 18} Although the state does not discuss the open container violation in its brief, we agree with the trial court that the open beer container provided Rosenkranz with a reasonable, articulable suspicion that Brown and the other occupants were committing a violation of R.C. 4301.62, the open container statute. Although the beer was located in the rear seat, it was not clear that the rear seat passenger had exercised exclusive control over the beverage. Thus, Rosenkranz could reasonably suspect that all of the occupants, including Brown, had engaged in an open container violation. Thus, the officer had an independent basis to request Brown's identification.
 {¶ 19} Brown claims that his placement in Snyder's cruiser for the purpose of determining his identity unconstitutionally prolonged the duration of the traffic stop. There is conflicting evidence as to whether Brown's identity was determined after the stop should have concluded. Rosenkranz testified that the traffic stop began at approximately 2:09 a.m., and that it normally takes approximately fifteen minutes to issue a citation for a headlight violation. Rosenkranz testified that the back-seat passenger exited the vehicle and reluctantly returned to it after repeated requests, which likely added a few moments to a routine stop. Rosenkranz testified that he radioed for backup shortly after the traffic stop began "because the stop was unusual," and that backup arrived within five minutes. He believed that Snyder was already on the scene when he was dispatched. Snyder testified that he was dispatched at 2:36:15 (hour:minute:second) a.m. and got there at 2:36:21 a.m. Thus, if we were to construe the evidence in Brown's favor, Brown was placed in Snyder's cruiser approximately 25 minutes after the vehicle was pulled over, i.e., beyond the fifteen minutes that Rosenkranz had indicated it would take him to complete the citation of the driver for the headlight violation. Snyder determined Brown's identity thereafter.
 {¶ 20} Even assuming that Brown's identity was determined after a reasonable period of time to issue the traffic citation, this delay has no significance under the present circumstances. Because Rosenkranz had reasonable, articulable suspicion that Brown was engaging in an open container violation, the deputy was justified in detaining Brown beyond the reasonable duration of the traffic stop for the purpose of completing his investigation of that independent infraction, which included ascertaining Brown's identity. Because the identifying information provided by Brown appeared to be false, the deputy was likewise entitled to place him within a cruiser while determining his true identity and to frisk him for weapons prior to placing him in the cruiser. See State v. Smyth, Montgomery App. No. 19882, 2004-Ohio-272;State v. Evans (1993), 67 Ohio St.3d 405, 618 N.E.2d 162. In addition, because Brown was lawfully detained, we find no fault with the drug-detection canine's sweep of the vehicle at this time. We note that a canine sniff does not constitute a search under the Fourth Amendment. United States v. Place (1983),462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. Thus, a police officer need not have a reasonable suspicion that a vehicle contains contraband prior to summoning a canine drug unit.
 {¶ 21} Brown cites several decisions in which the court discussed the limited ability of officers to detain and to frisk passengers that have been stopped due to a traffic violation by the driver. See State v. Taylor (2000), 138 Ohio App.3d 139,740 N.E.2d 704 (possession of drugs by one occupant of vehicle does not create a reasonable basis to suspect criminal activity by another occupant; in the absence of a reasonable suspicion of criminal conduct, the officer could not extend detention of the passenger); State v. Isbele (2001), 144 Ohio App.3d 780 (where officers lacked reasonable suspicion the passenger was engaged in criminal activity, police had no reason to detain her after arresting the driver of the vehicle); Robinette, supra;Pemberville v. Hale (1998), 125 Ohio App.3d 629, 709 N.E.2d 227
(after car in which defendant was a passenger was towed, the police officer's ordering of passenger into his cruiser and conducting a pat-down search prior to the passenger doing so was unconstitutional where the defendant was not given option of declining a ride and the accompanying search). Because Rosenkranz had a reasonable suspicion that Brown had violated the open container statute, we find those cases distinguishable.
 {¶ 22} Brown also cites to State v. Jamison (May 1, 2001), Montgomery App. No. 18453, and State v. Ford,149 Ohio App.3d 676, 2002-Ohio-5529,778 N.E.2d 642, in support of his claim that evidence must be suppressed where the identity of the defendant has been wrongfully obtained. In Jamison, we held that the removal of defendant's identification during a weapons pat-down was unlawful and the defendant was not obligated to identify himself. We reasoned that, because the improperly seized identification card led to the discovery of an arrest warrant, the evidence found during the inventory search should have been suppressed. In Ford, we followed Jamison and reiterated that evidence must be suppressed when it is obtained as the result of a search incident to an arrest when the arrest, itself, results from the discovery of the defendant's identity as a consequence of an unlawful search and seizure. While we agree with the principle set forth in these cases, we do not agree with Brown that his identity was unlawfully obtained due to an improper seizure. Accordingly, we conclude that Brown's Fourth Amendment rights were not violated.
 {¶ 23} Brown claims that his Fifth Amendment rights were violated when Rosenkranz questioned him about incriminating information without informing him of his Miranda rights. Brown asserts that "when questioning someone about incriminating evidence, such as a warrant, which will lead to certain arrest, a person must be mirandized properly. Here, that was not done and the statements about his identity should have been suppressed along with all `fruits of the poisonous tree.'"
 {¶ 24} The Fifth Amendment provides that "[n]o person * * * shall be compelled in any criminal case to be a witness against himself." "The Fifth Amendment privilege against compulsory self-incrimination `protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used.'" Hiibel v. Sixth Judicial Dist. Ct. of Nev., HumboltCty. (2004), 540 U.S. ___, 124 S.Ct. 2451 (quoting Kastigar v.United States (1972), 406 U.S. 441, 445, 92 S.Ct. 1653,32 L.Ed.2d 212); Ohio v. Reiner (2001), 532 U.S. 17, 20,121 S.Ct. 1252, 149 L.E.2d 158.
 {¶ 25} "To qualify for the Fifth Amendment privilege, a communication must be testimonial, incriminating, and compelled."Hiibel, 124 S.Ct. at 2460; Cincinnati v. Bawtenheimer (1992),63 Ohio St.3d 260, 264, 586 N.E.2d 1065 ("The Fifth Amendment protects the person against incrimination through compelled testimony or other compelled acts having some testimonial character."). In order for a disclosure to be testimonial, the defendant's communication "must itself, explicitly or implicitly, relate a factual assertion or disclose information." Hiibel,124 S.Ct. at 2460. The Supreme Court has recognized that the stating of one's name may constitute an assertion of fact relating to one's identity. Id. It noted:
 {¶ 26} "The narrow scope of the disclosure requirement is also important. One's identity is, by definition, unique; yet it is, in another sense, a universal characteristic. Answering a question to disclose a name is likely to be so insignificant in the scheme of things as to be incriminating only in unusual circumstances. In every criminal case, it is known and must be known who has been arrested and who is being tried. Even witnesses who plan to invoke the Fifth Amendment privilege answer when their names are called to take the stand Still, a case may arise where there is a substantial allegation that furnishing identity at the time of a stop would have given the police a link in the chain of evidence needed to convict the individual of a separate offense. In that case, the court can then consider whether the privilege applies, and, if the Fifth Amendment has been violated, what remedy must follow. We need not resolve those questions here." Hiibel, 124 S.Ct at 2461 (citations omitted).
 {¶ 27} We do not find that the circumstances before us present a case where Brown's provision of identifying information incriminated him or "furnish[ed] a link in the chain of evidence needed to prosecute him." The furnishing of Brown's name merely made the police aware that there was a juvenile warrant for his arrest. The fact that the deputy was able to place him into custody upon learning of the warrant does render the disclosure incriminating. In the case before us, we do not see — and Brown has not indicated — how the deputy's knowledge of his name would provide any evidence against him for the underlying offense or for any other crime. The disclosure of his name has assisted in a prosecution against him only in that the state was able to gain custody of him. Accordingly, Brown's Fifth Amendment rights were not violated when he was allegedly compelled to provide his name to the deputies.
 {¶ 28} The right to Miranda warnings are grounded in theFifth Amendment's prohibition against compelled self-incrimination. Moran v. Burbine (1986), 475 U.S. 412, 420,106 S.Ct. 1135, 89 L.E2d 410. Miranda warnings are required "when an individual is taken into custody or otherwise deprived of his freedom in any significant way and is subjected to questioning."Miranda, 384 U.S. at 478. "Questioning alone does not trigger the requirement; the subject must also be in custody. * * * Only a custodial interrogation triggers the need for a Miranda
rights warning." State v. Goodspeed, Montgomery App. No. 19979, 2004-Ohio-1819, citing State v. Biros, 78 Ohio St.3d 426,1997-Ohio-204, 678 N.E.2d 891, and Berkemer v. McCarty (1984),468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317. An individual is in custody when a reasonable person in the suspect's position would not have felt free to end the interrogation and to leave. UnitedStates v. Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1870,64 L.Ed.2d 497.
 {¶ 29} Because Brown was not compelled to provide incriminating statements when he was required to provide accurate identifying information, the Fifth Amendment — including the protections set forth in Miranda — are not implicated.
 {¶ 30} Brown's assignment of error is overruled.
 {¶ 31} The judgment of the trial court will be affirmed.
Fain, P.J. and Brogan, J., concur.