OPINION
{¶ 1} After his motion to suppress evidence was overruled, Daniel Diehl was found guilty after pleading no contest to fifth degree felony drug possession. He was sentenced to community control sanctions. On appeal, he argues in a single assignment of error that the trial court erred in overruling his motion to suppress. *Page 2 
 I {¶ 2} Kettering Police Officer Douglas Kowalski was the only witness at the suppression hearing. He testified that he and two other uniformed, armed officers, at 4:43 in the afternoon, conducted a "knock-and-advise type procedure" at an apartment about which there had been numerous complaints of drug activity. Prior to approaching the apartment, the police had determined that the apartment resident was Dewey Messer, for whom there was an active arrest warrant.
 {¶ 3} Diehl opened the apartment door in response to the officers' knock, and Messer then appeared at the door and consented to the officers' request to enter and speak with him.
 {¶ 4} Once inside the apartment, the officers obtained Diehl's identity and "ran his information," eventually learning that there were no warrants for his arrest. After confirming that there was an active warrant for Messer, he was handcuffed and searched. The officers then checked the apartment for other occupants, and in the process observed what appeared to be drugs and drug paraphernalia.
 {¶ 5} Officer Kowalski continued:
 {¶ 6} "Q. Okay. And in response to finding these items, what did you do next, Officer?
 {¶ 7} "A. At that point we detained, you know, we went over and spoke with Dewey Messer (ph) about the contents inside of his apartment and asked them if they had any additional items on them. They said they did not. At that time I asked Mr. Diehl if I could check him, and he complied and said sure I could check him, stood up and allowed me to pat him down.
 {¶ 8} "Q. And when you were patting him down, did you find anything? *Page 3 
 {¶ 9} "A. As I was patting him down in his rear pant pocket, I could feel what I determined to be a pill bottle, felt like a pill bottle which I have felt numerous times, asked him about the pill bottle and he indicated he did not have a pill bottle. This went back and forth a few times, and then I asked him if I could remove the pill bottle and he said sure.
 {¶ 10} "Q. He gave you consent to remove the item from his pocket?
 {¶ 11} "A. Yes.
 {¶ 12} "Q. And did you in fact do that?
 {¶ 13} "A. Yes, I removed the pill bottle from his back pocket."
 {¶ 14} After confirming that the contents of the pill bottle were methadone, a Schedule II drug, Diehl was arrested for drug possession.
 {¶ 15} At the close of the evidence, the State argued that Diehl consented to the patdown and the removal of the pill bottle from his pants pocket.
 {¶ 16} Defense counsel argued and the trial court, in response, found as follows:
 {¶ 17} "MR. BAILEY: The government is arguing that this search was as a result of consent given by Mr. Diehl, and I think it's — I think the Court is well able to see beyond this claim of consent.
 {¶ 18} "We have three armed officers in uniform coming into this apartment where Mr. Diehl is a visitor there. The officers find no evidence that Mr. Diehl is wanted for anything. There's no warrants for him. He is cooperative with the officers. He supplies them with his identification. They check him for warrants. There are no warrants for his arrest. The — to then claim that the search of him was based upon consent given I think is ludicrous at this point. We have three armed officers; they've already arrested the man whose apartment is there; *Page 4 
they've handcuffed him; they've done this in front of him. To then claim that while he consented to be searched by the officers after he's already witnessed his friend that he's visiting being arrested there, I think that the Court is well able to see beyond this as a consent or a consensual search.
 {¶ 19} "I think the fact is there was enough indicia of force, or at least threat of authority in this case that — to overcome any claim of consent that Mr. Diehl gave in this matter.
 {¶ 20} "THE COURT: Well, apparently, I'm ludicrous and I can't see beyond much, because I think he gave consent and that's the end of it."
 II {¶ 21} On appeal, Diehl essentially reiterates his argument to the trial court: that given the circumstances, he "did not feel he was free to leave and his consent was not freely given."
 {¶ 22} There is no direct evidence to support this contention. The only witness at the suppression hearing was Officer Kowalski, who testified that Diehl consented to the patdown and the removal of the pill bottle from his pocket. Diehl cannot succeed unless we hold that his seeing Messer arrested by three armed, uniformed police officers necessarily overcame his ability to withhold consent. This we decline to do. Although the trial court might have been persuaded by Diehl's argument, it wasn't, as was its prerogative. Although State v.Ford, 149 Ohio App.3d 676, 2002-Ohio-5529, 778 N.E.2d 642, cited by Diehl, contains language helpful to Diehl, Ford is easily distinguishable on its facts.
 {¶ 23} The assignment of error is overruled.
 III {¶ 24} The judgment will be affirmed. *Page 5 
 GRADY, J. and DONOVAN, J., concur. *Page 1