[Cite as *State v. Wertz*, 2017-Ohio-8766.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   27376 |
| | : | |
| v. | : | T.C. NO. 16-CR-894 |
| | : | |
| JOSHUA K. WERTZ | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

# O P I N I O N

Rendered on the 1st day of December, 2017.

. . . . . . . . . .

MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

KIRIAKOS G. KORDALIS, Atty. Reg. No. 0089697, 130 W. Second Street, Suite 1818, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Joshua K. Wertz appeals his conviction and sentence for one count of receiving stolen property (MV), in violation of R.C. 2913.51(A), a felony of the fourth degree.   Wertz filed a timely notice of appeal with this Court on December

12, 2016, arguing that the trial court erred in overruling his motion to suppress. We hereby reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

{¶ 2} The incident which forms the basis of the instant appeal occurred on April 4, 2015, when Trotwood Police Officer Robert Lingo was dispatched to 5225 Rucks Road on an anonymous report of a "suspicious circumstance." The caller described the suspect as a white male named "Josh" who was wearing glasses, a black jacket, and jean shorts. The caller also stated that the suspect, later identified as Wertz, was pushing a dirt bike down the street and behind the Rucks address.

{¶ 3} Upon arriving at the residence located at 5225 Rucks Road, Officer Lingo exited his cruiser and walked to the side of the house. From that vantage point, Officer Lingo observed Wertz, who matched the description provided in the dispatch, attempting to push a motorized dirt bike through a gap in the fence surrounding the backyard of the residence. The following exchange occurred at the July 1, 2016 hearing on Wertz's motion to suppress:

Q. * * *And what happens at that point?

A. I call for him to stop and had him come over to me.

Q. Does he?

A. Yes.

Q. * * * What happens next?

A. He comes over to me. I ID him. He provides a photo ID, and I copied down the identification number. And I also checked the vehicle identification number on the bike, and I called into LEADS - - to dispatch to

be checked on LEADS to see if it's stolen. It comes back as not stolen so I went ahead and logged the information about the bike and the subject in my dispatch log, and I also did a field interview card on it.

* * *

Q. And why did you conduct a field interview?

A. Well, because the nature of the call was suspicious circumstances, and leading up to it he matched the description of the call and, it being suspicious enough, I was concerned that the bike might be stolen. So I wanted to record the information in case it should turn up to be - - that should turn up to be the case.

Q. So, sir, it's fair to say that you were investigating at that point?

A. Yes, sir.

* * *

Q. * * * So, sir, after you had the field interview with Mr. Wertz, what happened next?

A. Once it was done, I let him go because I had no further cause to keep him.

* * *

Q. And when you were speaking with Mr. Wertz, where was he located?

A. He came over to where I was to the side of the house in the yard with the bike.

* * *

A. I spoke with him there.

{¶ 4} On cross examination, the following exchange occurred:

Q. And you didn't immediately see any criminal activity when you arrived to the back yard, correct?

A. Correct.

* * *

Q. And you said you called out to Josh to come to you?

A. Yes.

* * *

Q. * * * And he - - you said that he brought the dirt bike to you when he - - you called out to him to come.

A. Yes.

Q. * * * And it was still actually in the back yard when you came and took the vin number off it, correct?

A. I was - - we were more around the front of the house.

Q. You had him bring it all the way to the front of the house?

A. To the front or the side. More towards the front.

* * *

Q. Where did you find the VIN number on the bike?

A. I don't recall the exact location. I looked for it until I found it.

Q. And you had to flip the bike around and look all over the engine area? Is that accurate?

A. It wasn't hard to find it I remember.

Q. * * * Did you have to like flip the bike up and - -

A. I didn't have to like - - you mean turn it upside down?

Q. No, just kind of stand it up and look at it all around?

A. Yes, with it standing I looked around until I found it.

* * *

Lingo stated that the residence at 5225 Rucks Road belonged to Wertz.

{¶ 5} The record reflects that approximately one year after his encounter with Wertz, Officer Lingo was promoted to detective. Detective Lingo was then assigned to investigate a breaking and entering at a garage located on Rucks Road. During his investigation, Lingo discovered that a dirt bike reported as stolen matched the VIN number that he recorded from the bike that Wertz was in possession of in April of 2015. Thereafter, Detective Lingo arrested Wertz for receiving stolen property.

{¶ 6} On May 23, 2016, Wertz was indicted for one count of receiving stolen property. At his arraignment on June 1, 2016, Wertz stood mute, and the trial court entered a plea of not guilty on his behalf. In his June 15, 2016 motion to suppress, Wertz argued that Detective Lingo trespassed onto his property and detained him unlawfully with no reasonable suspicion of criminal activity. Wertz also argued that the dirt bike was unlawfully seized and the VIN number obtained without a search warrant. Thus, Wertz concluded that any physical evidence and/or statements should be suppressed.

{¶ 7} On October 27, 2016, the trial court issued a decision overruling Wertz's motion to suppress. In its decision, the trial court found as follows:

* * *

There is **absolutely no evidence** even suggesting that Lingo's

earlier encounter with Defendant was anything but consensual. While Lingo did not inform Defendant that he could leave at any time, Lingo neither displayed [n]or exerted any force or authority compelling Defendant to cooperate or otherwise engage with the officer. Lingo did not draw his weapon, place his hands on Defendant, or indicate in any fashion that Defendant was not free to leave. Lingo clearly revealed the purpose of his visit to Defendant's home and Defendant's interaction with Lingo was completely voluntary. At no time did Defendant attempt to terminate the exchange or to leave his property. And because the totality of these circumstances could never meet any reasonable definition of "seizure" as described in [*United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)], Defendant's Fourth Amendment rights were not implicated and *Miranda* was not triggered

**IV. <u>Conclusion</u>**

Off. Lingo acted appropriately toward Defendant every step of the way. For the foregoing reasons, Defendant's Motion is hereby **OVERRULED**.

**{¶ 8}** On November 10, 2016, Wertz pled no contest to one count of receiving stolen property. The trial court found him guilty and sentenced him to community control. It is from this judgment that Wertz now appeals.

**{¶ 9}** Wertz's sole assignment of error is as follows:

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT IMPROPERLY DENIED THE DEFENDANT'S

MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE RIGHTS CONFERRED BY ARTICLE I, SECTION XIV OF THE OHIO CONSTITUTION AND THE FOURTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

**{¶ 10}** Wertz argues that the trial court incorrectly found that the encounter between Officer Lingo and Wertz on April 4, 2015, was consensual.

**{¶ 11}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, 797 N.E.2d 71, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552, 651 N.E.2d 965 (1995). When reviewing a ruling on a motion to suppress, deference is given to the trial court's findings of fact so long as they are supported by competent, credible evidence. *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo; therefore, we must decide whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706, 710, 707 N.E.2d 539 (4th Dist.1997).

**{¶ 12}** "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures." *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Not all interactions between citizens and the police, however, implicate the protections of the Fourth Amendment. *State v. Garrison,* 2d Dist. Montgomery No. 24857, 2012–Ohio–3846, ¶ 15.

**{¶ 13}** The law recognizes three types of police-citizen interactions: 1)

a consensual encounter, 2) a brief investigatory stop or detention, and 3) an arrest. *State v. Jones,* 188 Ohio App.3d 628, 2010–Ohio–2854, 936 N.E.2d 529, ¶ 13 (10th Dist.).

{¶ 14} "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away." *State v. Smith*, 2d Dist. Montgomery No. 20165, 2004-Ohio-1171, ¶ 11. During a consensual encounter, the officer and citizen can engage in conversation, and a person's voluntary statements may be used against him or her, as long as that the person knows that he or she is free to walk away and the police have not conveyed a message that compliance with their requests is required. *State v. Barton,* 2d Dist. Montgomery No. 21815, 2007–Ohio–2348, ¶ 14–15.

{¶ 15} A search is valid and does not violate the Fourth Amendment when it is consensual, so long as the consent is freely and voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The burden of proof is on the State to show, under the totality of the circumstances, by clear and convincing evidence that the consent was voluntary. *State v. Connors-Camp,* 2d Dist. Montgomery No. 20850, 2006-Ohio-409, ¶ 27.

{¶ 16} Investigatory detention, often referred to as a *Terry* stop, allows an officer to briefly stop and temporarily detain individuals in order to investigate possible criminal activity. *State v. Strozier,* 172 Ohio App.3d 780, 2007–Ohio–4575, 876 N.E.2d 1304 (2d Dist.), citing *Terry v. Ohio.* An investigatory stop does not constitute an arrest or place the suspect in custody. *Jones* at ¶ 16. It is well established that "[a]n individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have

believed that he was not free to leave or is compelled to respond to questions." *State v. Love,* 2d Dist. Montgomery No. 23902, 2011–Ohio–1287, ¶ 18, quoting *In re D.W.,* 184 Ohio App.3d 627, 2009–Ohio–5406, 921 N.E.2d 1114, ¶ 13–15 (2d Dist.).

{¶ 17} Upon review, we conclude that the trial court erred when it overruled Wertz's motion to suppress. Specifically, we conclude that the encounter between Lingo and Wertz was a not a consensual encounter, and that the trial court erred in concluding that there was "**absolutely no evidence** even suggesting that Lingo's earlier encounter with Defendant was anything but consensual*.*" Based upon the information provided in the dispatch, Lingo approached the residence located at 5225 Rucks Road and walked to the side of the house where he observed Wertz, in his own backyard and not in a public place, trying to push a dirt bike through a gap in the fence into an open field, a place where dirt bikes are often ridden. Lingo commanded Wertz to stop pushing the bike and come over to where Lingo stood and speak to him. Lingo testified that he may have walked into Wertz's backyard "a couple of steps," and that he did not observe any criminal activity or indicia of illegality at the time. He testified that he was concerned that the bike might be stolen, and that he was conducting an investigation based upon Wertz's appearance matching the description provided by the anonymous caller, which Lingo termed "suspicious enough." Lingo testified that he asked Wertz several questions and checked his identification, and he testified that Wertz was cooperative during the interview. Lingo further recorded the VIN number of the bike in the course of his investigation, after searching the bike "until I found it." Lingo testified that he learned the bike had not been reported as stolen. Based upon these facts, we cannot conclude that a reasonable person in Wertz's position would have believed that he was free to go; Wertz, on his own

property, was ordered to stop moving a dirt bike, an activity which exhibited at the time no evidence of illegality, and to come to Lingo. Wertz was asked several questions, and the VIN number of the bike was searched for and recorded. Lingo stated that after the interview, he "let [Wertz] go because I had *no further cause to keep him.*" Since Lingo's encounter with Wertz was not consensual, Wertz's assigned error is sustained. The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion.

FROELICH, J., concurs.


WELBAUM, J., dissenting:

{¶ 18} I very respectfully dissent from the majority's holding that the encounter between Detective Lingo and Wertz was nonconsensual.

{¶ 19} The fact that Detective Lingo called out for Wertz to stop pushing the dirt bike and to come over and speak with him does not render the encounter nonconsensual. "Even when a law enforcement [officer] phrases a statement in an imperative or declarative—rather than in an interrogative—fashion, courts have generally ruled that an imperative or declarative statement, by itself, does not transform a consensual encounter into a seizure." *State v. Blankenship*, 4th Dist. Ross No. 13CA3417, 2014-Ohio-3600, ¶ 16, citing *Columbus v. Body*, 10th Dist. Franklin No. 11AP-609, 2012-Ohio-379, *State v. Duncan*, 9th Dist. Summit No. 21155, 2003-Ohio-241, and *United States v. Brown*, 447 Fed.Appx. 706, 708-709 (6th Cir.2012). "Instead, courts must examine the totality of the circumstances present in each case in order to ascertain whether an imperative or declarative statement constitutes a sufficient show of authority to ripen a consensual

encounter into a seizure subject to Fourth Amendment scrutiny." (Citation omitted.) *Id.*

{¶ 20} In *State v. Smith*, 45 Ohio St.3d 255, 544 N.E.2d 239 (1989), the Supreme Court of Ohio held that a consensual encounter did not ripen into a seizure when an officer stated "hey, come here a minute," to the defendant, and none of the officers on the scene displayed any weapons, physically touched the defendant, used a threatening tone of voice, ordered the defendant into the police cruiser, indicated that the defendant's noncompliance would lead to his arrest, or block the defendant's exit with their cruiser. *Id.* at 258-259, *reversed on other grounds*, *Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990).

{¶ 21} Likewise, in *Columbus v. Body*, 10th Dist. Franklin No. 11AP-609, 2012-Ohio-379, the Tenth District Court of Appeals determined that an officer's statement "come over here," did not constitute a seizure under circumstances where the officer acted without the threatening presence of several officers, did not activate his siren or search light, did not attempt to block the defendant's path, did not attempt to pursue the defendant, did not display his weapon, and did not use a threatening voice. *Id.* at ¶ 20.

{¶ 22} The *Body* court also noted that "[f]ederal courts have also recognized that 'simply calling out to someone to come over to talk does not constitute a seizure.' " *Id.* at ¶ 18, quoting *Brown* at 709, citing *United States v. Matthews*, 278 F.3d 560, 562 (6th Cir.2002), *abrogated on other grounds*, *United States v. McMurray*, 653 F.3d 367 (6th Cir.2011) (holding that an officer's statement "hey, buddy, come here," did not constitute a seizure because the addressee could have "politely declined to do so, and walked away").

{¶ 23} More recently, in *State v. Blankenship*, 4th Dist. Ross No. 13CA3417, 2014-

Ohio-3600, the Fourth District Court of Appeals held there was a consensual encounter where an officer told the defendant to "step over here," and did not otherwise engage in conduct that could be construed as a show of authority sufficient to constitute a seizure. *Id.* at ¶ 23-24. Specifically, the officer did not pursue the defendant, continue to interrogate the defendant against his expressed desire, call the defendant to halt, block the defendant's path, hold the defendant's identification or other property, physically grab or move the defendant, display his weapon, activate his siren or cruiser lights, or indicate that the defendant's noncompliance would lead to his arrest. *Id.* at ¶ 24. The *Blankenship* court also noted that the officer was alone, and thus acted without the " 'threatening presence of several officers.' " *Id.*, quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶ 24} The present case is analogous to *Smith*, *Body,* and *Blankenship.* There is nothing in the record indicating that Detective Lingo's conduct amounted to a show of authority that would have caused a reasonable person in Wertz's position to feel as though he could not walk away and/or decline the officer's request. Specifically, there is nothing in the record indicating that Detective Lingo used a threatening or commanding tone when he told Wertz to "come over here." Furthermore, Detective Lingo did not pursue Wertz in his back yard, block Wertz's path, display a weapon, threaten Wertz, or indicate that Wertz's noncompliance would lead to his arrest. There is also nothing in the record indicating that Wertz asked Detective Lingo to leave, or that Wertz expressed any desire to end the encounter. Moreover, Wertz was not physically searched or arrested by Detective Lingo. In fact, upon concluding the conversation with Wertz, Detective Lingo simply got back in his cruiser and left the scene. The record further

indicates that Detective Lingo was acting alone during the encounter, without the threatening presence of several officers.

{¶ 25} The fact that Detective Lingo asked Wertz questions, checked Wertz's identification card, and recorded the VIN of Wertz's dirt bike with his consent does not alter the consensual nature of the encounter. *See, e.g., State v. Hardin*, 2d Dist. Montgomery No. 20305, 2005-Ohio-130, ¶ 19-20 (finding a consensual encounter where an officer asked the defendant questions, requested information, and conducted a pat-down search with the defendant's consent).

{¶ 26} The consensual nature of the encounter is also not altered by the fact that Detective Lingo initiated the encounter on Wertz's private property. "[T]he police may enter private property without such conduct constituting a search, provided that the officers restrict their movements to those areas generally made accessible to visitors, such as driveways, walkways, or similar passages." *State v. Lewis*, 2d Dist. Montgomery No. 22726, 2009-Ohio-158, ¶ 25, citing *State v. Lungs*, 2d Dist. Montgomery No. 22704, 2008-Ohio-4928, ¶ 20; *State v. Peterson*, 173 Ohio App.3d 575, 2007-Ohio-5667, 879 N.E.2d 806, ¶ 17 (2d Dist.) ("The only areas of the curtilage where the officers may go are those impliedly open to the public."). In *Lewis*, this court held that the consensual nature of the defendant's encounter with a police officer was not altered by the fact that it occurred on a grassy area between the alley and the defendant's fence. Here, Detective Lingo testified that the encounter occurred in an open area on the side of Wertz's house, and that while he may have walked "a couple of steps" into the side of Wertz's backyard, he did not go over Wertz's fence. Like *Lewis*, Lingo remained in an area outside the defendant's fence, which is an area generally accessible to visitors.

{¶ 27} For the foregoing reasons, I respectfully disagree with the majority's conclusion that Detective Lingo's encounter with Wertz was nonconsensual, as a reasonable person in Wertz's position would not have felt as though he was not free to leave or that he was compelled to answer Detective Lingo's questions. Because I find the encounter consensual, there was, in my opinion, no unlawful seizure that warranted the suppression of the evidence at issue. Accordingly, I would affirm the judgment of the trial court overruling Wertz's motion to suppress.

. . . . . . . . . . . . .

Copies mailed to:

Michael J. Scarpelli
Kiriakos G. Kordalis
Hon. Steven K. Dankof