OPINION
{¶ 1} On February 21, 2003, Steven Wayne Goodspeed wasindicted on one count of robbery and one count of failure tocomply with the order or signal of a police officer. The chargesstemmed from an incident wherein Goodspeed and a co-defendant hadknocked down and robbed an eighty-three-year-old woman and stolenher purse. Goodspeed and his co-defendant then fled from thepolice in an automobile driven by Goodspeed. While attempting toelude the police, Goodspeed crashed his automobile into atelephone pole. He then exited the vehicle and fled on foot. Ashort time later, Goodspeed was captured by police officers.
 {¶ 2} On March 18, 2003, Goodspeed filed a motion to suppressstatements he made to police officers following his arrest. Ahearing was held, and at its conclusion the trial court overruledGoodspeed's motion.
 {¶ 3} On May 27, 2003, Goodspeed plead no contest to therobbery count. In exchange for this plea, the State dismissed thecount against Goodspeed for failing to comply with the order orsignal of a police officer. On June 10, 2003, Goodspeed wassentenced to four years in prison.
 {¶ 4} Goodspeed now appeals the trial court's decisionoverruling his motion to dismiss and the sentence imposed by thetrial court.
 FIRST ASSIGNMENT OF ERROR {¶ 5} "The trial court erred in failing to grant appellant'smotion to suppress."
 {¶ 6} When considering a motion to suppress, the trial courtassumes the role of the trier of facts and, as such, is in thebest position to resolve conflicts in the evidence and determinethe credibility of the witnesses and the weight to be given totheir testimony. State v. Retherford (1994),93 Ohio App.3d 586. Upon appellate review of a decision ona motion to suppress, the court of appeals must accept the trialcourt's findings of fact if they are supported by competent,credible evidence in the record. Id. Acceptingthose facts as true, the appellate court must independently determineas a matter of law, without deference to the trial court's conclusion,whether they meet the applicable legal standard. Id.
 {¶ 7} Defendant argues that the trial court erred when itdenied his motion to suppress statements he made to police.Defendant contends that he was so emotionally disturbed ordistraught when he made the statements that they are inherentlyunreliable, and that his condition so diminished his capacity torationally understand the Miranda warnings he was given thatany statements he made thereafter were involuntary.
 {¶ 8} The facts and conclusions of the trial court were asfollows:
 {¶ 9} "THE COURT: first of all, Court finds that the facts arethat an officer of the Oakwood Police Department saw a subjectpush someone down. That subject then went to an automobile toflee. The automobile was followed initially and then eventuallychased by the officer at high speeds. The vehicle then wasinvolved in a collision or a wreck with a pole. And the defendantin this case, Mr. Goodspeed, was apprehended near a building.
 {¶ 10} "At that point he made some statements which the Courtfinds as the officer indicated were unsolicited statements whereno questions were asked, where he was crying that he wasn't doinganything. It wasn't his fault and he was threatened with ahammer.
 {¶ 11} "Thereafter the defendant, Mr. Goodspeed, was takeninto custody, taken to the Oakwood Police Department where he wasbrought to Detective Yount's office. In Detective Yount's officebefore being asked any questions, although at this point he wasclearly in custody, there were what were referred to as excitedutterances where he explained the circumstances that thedefendant had found himself in.
 {¶ 12} "The Court finds that that was not in responseinitially to any questions of the officer. Furthermore, the Courtspecifically finds that the defendant at that point was cryinguncontrollably and he was then consoled. He was advised of hisMiranda rights by means of the form that is State's Exhibitnumber 1, which the officer went through in detail with him. Andthen the Waiver of Rights form was also covered with thedefendant, and the defendant signed the Waiver of Rights form.
 {¶ 13} "The evidence is that there was no force, no duress, nopromises, no threats, no coercion or deprivation and that thedefendant understood what he was doing and that he was coherent.
 {¶ 14} "The law with regard to Miranda rights is that they areonly required when there is custodial interrogation. Althoughit's — it may be that the defendant was in custody when he wasfirst detained by the officer on the street, there is nointerrogation. Therefore, the statements that he made at thatpoint about saying that he was threatened and crying that hewasn't doing anything, those statements are volunteeredstatements and should not be suppressed on a constitutionalbasis.
 {¶ 15} "Thereafter, the initial statements that the defendantmade in the interrogation room with Detective Yount for the samereason should not be suppressed. Those are voluntary orvolunteered statements and they are not in response tointerrogation. And whether or not the defendant is in custodyunless he is tricked into making those statements in some way,shape or form, they should not be suppressed based on Miranda orits progeny.
 {¶ 16} "Finally, the issue then is whether the statements thatthe defendant made after that point are — are or are notadmissible. In the circumstances of this case, it is the burdenof the State to prove that there was an intelligent voluntarywaiver based upon the totality of facts and circumstances.
 {¶ 17} "One of those circumstances that the Court shouldconsider, although it is not a determining factor, is the mentalstatus of the defendant and in particular I refer to the case ofState of Ohio versus Phillips. That's out of the Second DistrictCourt of Appeals, August 11th, 2000, 2000 Ohio Appeal, Lexus 3rd3605 where the Second District Court of Appeals has specificallystated, `The suspect's impaired mental condition at the time ofwaiver and confession has some bearing on the issue ofvoluntariness, but only as to whether police officersdeliberately exploited the suspect's mental condition to coercethe waiver and confession.'
 {¶ 18} "In this case I find that there is absolutely noevidence that anyone exploited a mental or emotional condition ofthe defendant to coerce a confession. The long and the short ofthat is the Court believes that the Miranda rights wereadequately given. Furthermore that the statements by thedefendant were voluntary under the totality of circumstances.
 {¶ 19} "Therefore, the Motion to Suppress is in its entiretygoing to be overruled. What I'm going to do is I'm going toconfirm that in writing with the finding and the basis of thatbeing on the record. What I would like to do is place this matteron the docket for Tuesday." (Suppression Tr. 63-66).
 {¶ 20} Having reviewed the record, we find that the trialcourt's findings of fact are supported by competent, credibleevidence. We must now address whether the trial court's decisionto overrule the Defendant's motion to dismiss was the appropriatelegal finding. For the sake of simplicity, we will break down thestatements made by the Defendant into two categories: those hemade prior to hearing his Miranda rights, and those he madeafter he heard and waived his Miranda rights.
 The Defendant's Pre Miranda Statements {¶ 21} Miranda warnings are required only "when an individualis taken into custody or otherwise deprived of his freedom in anysignificant way and is subjected to questioning." Miranda v.Arizona (1966), 384 U.S. 436, 478. Questioning alone does nottrigger the requirement; the subject must also be in custody.State v. Biros (1997), 78 Ohio St.3d 426, 678 N.E.2d 891.Custody does not exist when a reasonable person in the suspect'sposition would not have felt free to end the interrogation andleave. United States v. Mendenhall (1980), 446 U.S. 544,100 S.Ct. 1870, 64 L.Ed.2d 497.
 {¶ 22} "Only a custodial interrogation triggers the need for aMiranda rights warning." Berkemer v. McCarty (1984),468 U.S. 420, 104 S.Ct. 3138. Custodial interrogation is defined as"questioning initiated by law enforcement officers after a personhas been taken into custody or otherwise deprived of his freedomof action in any significant way." Miranda, supra.
The statements the Defendant made prior to being read hisMiranda warnings were made on two separate occasions: (1) when he was first captured and taken into police custody and (2) when he was first brought from the cell-block to Oakwood Police Department Detective Michael Yount's office for questioning.
{¶ 23} The Defendant's first statement was made immediatelyafter he was captured by the police. Officer James VincentTovinitti testified that as he was searching the Defendant, theDefendant stated that "he didn't do it. He was forced to do it.And he was threatened [by the co-defendant] with a hammer."(Suppress Tr. 31).
 {¶ 24} The Defendant's second statement was made immediatelyafter the Defendant was brought from the cell block intoDetective Jeffrey Michael Yount's office. Yount testified thatthe Defendant was crying uncontrollably at the time. DetectiveYount testified that as soon as the Defendant sat down in hisoffice, but before Detective Yount began questioning him, theDefendant stated:
 {¶ 25} "My life is over. I have nothing to live for. I have noheat or electricity. My wife took all my money and I raised herkids. I was desperate for money. My daughter has a criminal for afather. I have never before broken the law. My wife trashed mylife. I lost my sense of smartness. I can't get it turned around.I was going to be homeless. I have now lost my freedom. I don'tdeserve to go to jail. I was in jail in that house anyway. I needa second chance. It was my stupid idea and that is how desperateI got." (Suppress Tr. 37-38).
 {¶ 26} The Defendant was in police custody at the time he madeboth statements. This leaves the question of whether theDefendant was being interrogated or questioned at the time hemade the statements. During the motion to suppress hearing, bothTovinitti and Detective Yount testified that they did not ask theDefendant any questions prior to the statements. (Suppression Tr.27, 31, 37-38). We find that the evidence overwhelmingly showsthat Defendant was not being questioned when he made thestatements and that his statements were voluntarily made.Accordingly, we find the trial court was correct in overrulingthe Defendant's motion to suppress the statements he made priorto receiving his Miranda warnings.
 The Defendant's Post Miranda Statements {¶ 27} In order for a statement made by the accused to beadmitted in evidence, the prosecution must prove that the accusedeffected a voluntary, knowing, and intelligent waiver of hisFifth Amendment right against self-incrimination. State v.Edwards (1976), 49 Ohio St.2d 31, 38 (citing Miranda v.Arizona [1966], 384 U.S. 436, 86 S.Ct. 1602) The test for voluntariness under a Fifth Amendment analysis is whether or not the accused's statement was the product of police overreaching:
"The Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion. The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on `free choice' in any broader sense of the word." State v. Dailey (1990), 53 Ohio St.3d 88, 92,559 N.E.2d 459 (citing Moran v. Burbine [1986], 475 U.S. 412, 421,106 S.Ct. 1135).
In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.Edwards, 49 Ohio St.3d at paragraph two of the syllabus; seeState v. Brewer (1990), 48 Ohio St.3d 50, 58, 549 N.E.2d 491.
The totality of the circumstances analysis is triggered by evidence of police coercion. Clark, supra, at 261,527 N.E.2d 844. "[C]oercive police activity is a necessary predicate to the finding" that a suspect involuntarily waived his Miranda rights and involuntarily confessed. Connelly, 479 U.S. at 167,107 S.Ct. at 522, 93 L.Ed.2d at 484. A suspect's decision to waive his Miranda rights and to make a confession are made voluntarily absent evidence that "his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." Colorado v. Spring (1987),479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954, 966; Moore,supra at 32, 689 N.E.2d 1; State v. Dailey (1990),53 Ohio St.3d 88, 91, 559 N.E.2d 459.
The suspect's impaired mental condition at the time of the waiver and the confession has some bearing on the issue of the voluntariness, but only as to whether police officers deliberately exploit the suspect's mental condition to coerce the waiver and confession. Connelly, 479 U.S. at 164, 93 L.Ed.3d at 486; State v. Nobles (1995) 106 Ohio App.3d 246, 279,665 N.E.2d 1137.
Immediately after the Defendant made the statement to Detective Yount discussed above, the Defendant begged Detective Yount for his gun so that he could shoot himself in the head. (Suppression Tr. 38-39). Detective Yount testified that he told the Defendant that doing something like that would not be necessary and then spent a few minutes calming the Defendant. After the Defendant had calmed down, Detective Yount informed the Defendant of hisMiranda rights using the departmental pre-interview form. Detective Yount testified that he asked the Defendant if he understood his rights at each step of the pre-interview form. After the Defendant indicated that he understood his Miranda
rights, Detective Yount read him the waiver of rights provision on the form. Detective Yount asked the Defendant about his education and the Defendant indicated that he had completed twelve years of school. Detective Yount then asked the defendant to sign the line indicating that he was waiving his Miranda
rights. The Defendant did this. The record contains no evidence that the defendant did not understand what he was being told, nor is there any evidence showing that the Defendant was subjected to any threats or intimidating behavior at this time.
{¶ 28} After waiving his Miranda rights, the Defendantexplained that robbing the victim was his idea, and explained hisand his co-defendant's actions on the day of the robbery.(Suppression Tr. 45-49). The Defendant appears to argue that thestatements he made to the police after he was informed of hisMiranda rights should have been suppressed due to his mentalstate at the time he waived his Miranda rights. We disagree.
 {¶ 29} There is nothing in the record to support theconclusion that the police officers deliberately exploited theDefendant's alleged impaired state to coerce him into waiving hisMiranda rights and admit to committing a robbery. Appellant wasclearly emotionally distraught when he was first brought intoDetective Yount's office. However, there is no evidenceindicating that he was yet emotionally distraught when he waivedhis Miranda rights. Further, there is no evidence to show thatDetective Yount took advantage of Appellant's impaired mentalstate to coerce him into waiving his Miranda rights and makinga self-incriminating statement. There is, in fact, evidence tosupport the conclusion that Appellant voluntarily waived hisMiranda rights. Appellant signed the waiver form, which isstrong proof that the waiver was valid. North Carolina v.Butler (1979), 441 U.S. 369, 274-275, 99 S.Ct. 1755, 1758-1759,60 L.Ed.2d 286, 293; Moore, supra at 32, 689 N.E.2d 1. Therecord demonstrates that Detective Yount informed the Defendantof his Miranda rights. (Suppression Tr. 40). Specifically, therecord indicates that Detective Yount went through a point bypoint recitation of the Defendant's Miranda rights through theuse of a departmental pre-interview form. (Suppression Tr. 40).Detective Yount testified that after he finished explaining theDefendant's Miranda rights, the Defendant signed the formexpressly waiving those rights. (Suppression Tr. 43-44).
 {¶ 30} We conclude the prosecution sustained its burden toprove by a preponderance of the evidence that the Defendantvoluntarily waived his Miranda rights. We agree with the trialcourt that the Defendant's motion to suppress should have beenoverruled. Accordingly, we overrule Appellant's first assignmentof error.
 {¶ 31} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 32} "The trial court erred in failing to sentence theappellant to the minimum and failing to state that the shortestterm would either demean the seriousness of the offender'sconduct or would not adequately protect the public from futurecrime by the offender."
 {¶ 33} R.C. 2953.08(A)(4) confers a right of appeal ondefendants whose sentence is contrary to law. Defendant arguesthat his sentence is contrary to law because the trial courtfailed to comply with R.C. 2929.14(B) when it sentenced him to aterm of imprisonment greater than the minimum available sentencefor the offense.
 {¶ 34} In order to impose more than the statutory minimumsentence upon an offender who has not previously served a prisonterm, the trial court must find either "that the shortest prisonterm will demean the seriousness of the offender's conduct orwill not adequately protect the public from future crime by theoffender or others," or both. R.C. 2929.14(B)(2).
 {¶ 35} On the robbery charge, the trial court sentenced theDefendant to four years in prison. This sentence was more thanthe minimum two year authorized prison sentence, but less thanthe eight year maximum authorized prison sentence. The courtstated:
 {¶ 36} "Mr. Goodspeed, I've reviewed the purposes andprinciples of sentencing and the risk of recidivism factors inthe Ohio Revised Code. And although you do not have any otherfelony convictions, I'm sure that you are aware the circumstancesof this offense are that you and you co-defendant helped eachother in committing an offense where an 83-year-old lady who wasotherwise unable to take care of herself or help herself wasknocked to the ground and had her purse stolen." (Sentencing Tr.5).
 {¶ 37} The trial court further stated:
 {¶ 38} "I have considered the minimum sentence; however,because of the nature of the offense, particularly that you havean elderly victim and the fact that you admittedly were quitehigh on drugs at the time this occurred and in fact probablyaddicted to drugs at the time this occurred, that sentence of aminimum is not appropriate." (Sentencing Tr. 6).
 {¶ 39} The trial court made no finding that the shortestprison term would demean the seriousness of the Defendant'sconduct or would not adequately protect the public from futurecrimes he might commit. R.C. 2929.14(B)(2). The State argues,however, that the court's statements concerning the matters thatmake Defendant's conduct egregious are substantially equivalentto the omitted seriousness finding, and therefore satisfy R.C.2929.14(E)(4).
 {¶ 40} It is readily evident that the court concluded that theDefendant's conduct was seriously wrong and harmful and why thecourt reached that conclusion. We do not take issue with theconclusions the court reached. The issue, however, is whether thecourt's statements satisfy the express pronouncement requirementsof R.C. 2929.14(E)(4). In making those findings, the trial courtwas not obligated to mimic the exact language used in R.C.2929.14(B), See State v. Shepherd (Dec. 6, 2002), MontgomeryApp. No. 19284, 2002-Ohio-6790, although that is probably thebetter practice. Nevertheless, R.C. 2929.14(B) requires the trialcourt to make findings, and those findings must clearly beexpressed on the record. See State v. Castle, Champaign App.No. 02CA09, 2003-Ohio-45. When the court fails to make thosefindings, we are mandated to "remand the case to the sentencingcourt to state, on the record, the required findings." R.C.2953.08(G)(1).
 {¶ 41} The purpose of the various findings requirements thatS.B. 2 imposed on sentencing courts is not to inform thedefendant why he is being sentenced to a particular term, or atleast not primarily. Rather, the findings requirements wereintended to create a template for state-wide application, inorder to make sentences of imprisonment imposed by Ohio's courtsmore uniform, fair, and, by avoiding unduly long sentences, lesscostly to the taxpayer. The function of the requirement is tocreate a regimen which the sentencing courts must follow toachieve the purposes and principles of felony sentencing. Unlikemany other procedural requirements, the findings/reasons regimendoes not readily lend itself to a substantial compliancealternative. The primary goal is not individual fairness butoverall consistency, and to that end observance of the formsprescribed by the statute is necessary.
 {¶ 42} We cannot find that the trial court made the requisiteR.C. 2929.14(B)(2) finding to support its imposition of more thanthe minimum sentence. Although one or more of the remarks made bythe trial court portray reasons that would support a finding thatthe two-year minimum sentence would demean the seriousness of theDefendant's conduct, the trial court failed to expressly statesuch a finding on the record. While the record shows that thetrial court considered and rejected the prospect of imposing theminimum sentence on the Defendant, the record fails tospecifically state why the trial court chose to depart from thestatutorily mandated minimum sentence based on one or both of thepermitted reasons in R.C. 2929.14(B)(2).
 {¶ 43} Because the trial court failed to make the requisiteR.C. 2929.14(B)(2) findings, we sustain the Defendant's secondassignment of error. Accordingly, we will reverse and vacate theDefendant's sentence and remand this case to the trial court forresentencing and, as a part of that proceeding, to state therequired findings on the record. R.C. 2953.08 (G)(1).
 Fain, P.J., concurs.
 WOLFF, J., dissents with opinion.