OPINION
{¶ 1} Defendant, Randie Hall, appeals from his conviction and sentence for operating a motor vehicle while under the influence of alcohol.
 {¶ 2} On October 12, 2003, at 3:05 a.m., Sergeant Lori Landacre of the Ohio State Highway Patrol observed Defendant's vehicle rapidly pass two other vehicles while traveling eastbound on U.S. Route 35 in Beavercreek. Sergeant Landacre activated her cruiser's radar and clocked Defendant's vehicle at 69 miles per hour in a 55 mile per hour zone. Sergeant Landacre made a traffic stop of Defendant's vehicle for the speeding violation.
 {¶ 3} When Sergeant Landacre approached Defendant's vehicle, he was smoking a cigarette. Defendant provided Sergeant Landacre with his license and proof of insurance. She then informed Defendant that she intended to issue a warning for the speeding violation. As Sergeant Landacre began to walk away, Defendant spoke to her. Sergeant Landacre concluded that Defendant's speech was slurred. Suspecting that he might be under the influence of alcohol, she returned to Defendant's vehicle to investigate that possibility. Defendant had put his cigarette down by this time, and Sergeant Landacre could smell a moderate odor of alcohol on Defendant's breath. Seeing that Defendant's eyes were glassy, Sergeant Landacre asked Defendant how much he had to drink, Defendant replied: "A few."
 {¶ 4} Sergeant Landacre ordered Defendant to exit his vehicle and perform field sobriety tests. Defendant complied. Sergeant Landacre administered the horizontal gaze nystagmus test and found six out of six clues positive for intoxication. Sergeant Landacre also administered the walk and turn test, which Defendant failed, and the one leg stand test, which Defendant passed.
 {¶ 5} When it began to rain, Sergeant Landacre asked Defendant to sit in her police cruiser. After he did, Sergeant Landacre asked Defendant to submit to a portable breath test. Defendant began to cry, and said he had a previous DUI conviction and knew he would test over the limit. Defendant nevertheless agreed to take the test, which yielded a result of .159, almost double the .08 legal limit. Sergeant Landacre then arrested Defendant for operating a motor vehicle while under the influence of alcohol, and read Defendant his Miranda rights.
 {¶ 6} Defendant was charged with operating a motor vehicle while under the influence of alcohol, R.C. 4511.19(A)(1), and speeding, R.C.4511.21(D)(1). Defendant filed a motion to suppress evidence. A hearing was held before a magistrate.
 {¶ 7} On March 5, 2004, the magistrate issued her decision, which sustained Defendant's motion to suppress with respect to the field sobriety test results and the results of the portable breath test, but overruled the motion with respect to any other evidence the State obtained. Defendant timely filed objections to the magistrate's decision. On June 3, 2004, the trial court issued its decision and judgment entry which overruled Defendant's objections. The trial court also rejected that portion of the magistrate's decision that held the results of the field sobriety tests were inadmissible, but affirmed the remainder of the magistrate's decision suppressing the results of the portable breath test.
 {¶ 8} On June 30, 2004, Defendant entered a plea of no contest to the OMVI charge and was found guilty by the trial court. The speeding charge was dismissed. The trial court sentenced Defendant to one hundred eighty days in jail, with one hundred seventy of the days suspended, a five hundred dollar fine, and an eighteen month license suspension.
 {¶ 9} Defendant timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 10} "THE TRIAL COURT ERRED WHEN IT RULED THAT THE OFFICER HAD SUFFICIENT REASONABLE AND ARTICULABLE SUSPICION TO DETAIN THE DEFENDANT-APPELLANT FOR FIELD SOBRIETY TESTS."
 {¶ 11} Defendant does not challenge the initial stop of his vehicle. We agree with the trial court that the stop of Defendant's vehicle for speeding was clearly lawful. Dayton v. Erickson, 76 Ohio St.3d 3,1996-Ohio-431. Defendant does argue, however, that police did not have sufficient reasonable suspicion that he was driving under the influence to justify field sobriety tests. We disagree.
 {¶ 12} The propriety of any investigative stop must be viewed in light of the totality of the surrounding facts and circumstances. State v.Bobo (1988), 37 Ohio St.3d 177. Decisions in cases such as this are highly fact-sensitive. State v. Marshall (December 28, 2001), Clark App. No. 2001C-A-35.
 {¶ 13} Sergeant Landacre testified that when Defendant spoke to her his speech was thick tongued and slurred to some extent. Defendant disputes that and claims that his speech was clear. The trial court, as the trier of facts at the suppression hearing, was entitled to determine what weight and credibility to give to the testimony it heard. State v.Retherford (1994), 93 Ohio App.3d 586. It elected to believe Sergeant Landacre.
 {¶ 14} Defendant argues that the record nevertheless belies Sergeant Landacre's testimony. He asks us to view the videotape of his stop to determine whether his speech was slurred. We have, but the quality of the video is such that we cannot find that the trial court abused its discretion when it credited Sergeant Landacre's testimony over Defendant's.
 {¶ 15} The record contains evidence showing that once Sergeant Landacre began talking to Defendant after he had put down his cigarette, she noticed a moderate, not slight, odor of alcohol on his breath. Defendant had been stopped for speeding at 3:00 in the morning, driving fourteen miles per hour over the posted speed limit, which is not a nominal or de minimus violation. While speeding is not necessarily an indicia of intoxication, it can be. Other indicia of impairment in this case include Defendant's glassy eyes and his admission that he had consumed "a few" alcoholic drinks.
 {¶ 16} While none of the factors and circumstances known to Sergeant Landacre, if considered alone, may be sufficient to give rise to a reasonable suspicion that Defendant was driving under the influence and therefore justify field sobriety tests, the totality of these facts and circumstances is sufficient to create a reasonable suspicion of a possible OMVI violation that justified further investigation, including field sobriety tests. See State v. Criswell (July 29, 2005), Montgomery App. No. 20952.
 {¶ 17} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 18} "THE TRIAL COURT ERRED WHEN IT REFUSED TO SUPPRESS THE EVIDENCE BECAUSE THE STATE FAILED TO MEET ITS BURDEN OF PROVING THAT THE OFFICER HAD PROBABLE CAUSE TO BELIEVE THE DEFENDANT WAS DRIVING UNDER THE INFLUENCE."
 {¶ 19} Defendant argues that Sergeant Landacre lacked the necessary probable cause to arrest him for operating his motor vehicle while under the influence of alcohol. We disagree.
 {¶ 20} In determining whether probable cause exists to arrest an individual for OMVI, courts consider whether, at the moment of arrest, the police had sufficient information, derived from a trustworthy source, to cause a prudent person to believe that the suspect was driving under the influence. State v. Homan, 89 Ohio St.3d 421, 2000-Ohio-212. In making that decision a court should examine the totality of the facts and circumstances surrounding the arrest. Id.
 {¶ 21} Probable cause to arrest does not have to be based upon a suspect's poor performance on field sobriety tests alone. Id. Rather, the totality of the facts and circumstances can support a finding of probable cause to arrest even when no field sobriety tests were given, or when the test results must be excluded because of failure to comply with standardized testing procedures. Id.
 {¶ 22} In Homan, the Supreme Court held that in order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures. Id., paragraph one of the Syllabus. R.C. 4511.19(D)(4)(b) was subsequently amended, effective April 9, 2003, to permit the admission and consideration of field sobriety tests administered in substantial compliance rather than strict compliance with standardized testing procedures. Defendant's arrest on October 12, 2003, is governed by the amended version of R.C.4511.19(D)(4)(b).
 {¶ 23} Defendant argued in the trial court that his field sobriety test results should not be considered in determining whether police had probable cause to arrest him for DUI because those tests were not conducted in strict compliance with standardized testing procedures. As the trial court correctly observed, however, strict compliance is no longer the appropriate standard. R.C. 4511.19(D)(4)(b). An officer may testify about the results of field sobriety tests if they were administered in substantial compliance with standardized testing procedures. State v. Mahaffey (March 5, 2004), Greene App. No. 2003-CA5-6, 2004-Ohio-1023.
 {¶ 24} Defendant did not raise in the trial court any claim that his field sobriety tests were not conducted in substantial compliance with standardized testing procedures. Therefore, any error in finding that they were has been waived. We will not consider that issue which is being raised for the first time on appeal.
 {¶ 25} Considering the totality of the facts and circumstances, Sergeant Landacre had probable cause to arrest Defendant for driving under the influence of alcohol. Defendant had been stopped for speeding, fourteen miles per hour over the posted limit, at 3:00 a.m. There was a moderate odor of alcohol on Defendant's breath. Defendant's eyes were glassy and his speech was slightly slurred. Defendant admitted he had consumed "a few" alcoholic drinks, and he failed two out of three field sobriety tests. Even assuming that the results of those field sobriety tests should have been excluded for failure to comply with the applicable testing standards, the trial court could yet consider Sergeant Landacre's testimony about her observations of Defendant's poor performance on those tests. State v. Schmitt, 101 Ohio St.3d 79, 2004-Ohio-37. Further, Defendant's response when Sergeant Landacre asked him to take a portable breath test, saying that he knew he would test over the limit, portrays probable cause of an OMVI violation. There was clearly sufficient evidence to cause a prudent person to believe that Defendant was driving under the influence of alcohol, justifying Defendant's arrest.
 {¶ 26} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR {¶ 27} "THE TRIAL COURT ERRED WHEN IT REFUSED TO SUPPRESS THE STATEMENTS MADE BY DEFENDANT-APPELLANT AFTER HE WAS TAKEN INTO CUSTODY."
 {¶ 28} When the field sobriety tests were completed and it had begun to rain, Sergeant Landacre put Defendant in her police cruiser. Defendant was not handcuffed and was not under arrest at that time. When Sergeant Landacre asked Defendant to take a portable breath test he began to cry, and said he had a prior DUI and he knew he would test over the limit. The limit is now 0.08 After Defendant took the portable breath test, which yielded a result of 0.159, he was placed under arrest and advised of hisMiranda rights.
 {¶ 29} Defendant argues that because Sergeant Landacre advised him that she would arrest him for OMVI if he refused the portable breath test, based upon her observations of him, he was in custody for Miranda
purposes while he was seated in Sergeant Landacre's police cruiser. Therefore, the statements he made should be suppressed because they were elicited from him in the absence of required Miranda warnings or any voluntary waiver of those rights. We disagree.
 {¶ 30} The procedural safeguards prescribed by Miranda apply only when persons are subjected to "custodial interrogation." Miranda v. Arizona
(1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694. Whether a person is in custody for purposes of Miranda depends on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983),463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275. The relevant inquiry is how a reasonable person in the suspect's position would have understood his situation. Berkemer v. McCarty (1984), 468 U.S. 420, 442,104 S.Ct. 3138, 82 L.Ed.2d 317.
 {¶ 31} Although Defendant was seized and briefly detained pursuant to a Terry v. Ohio (1968), 392 U.S. 1 investigatory stop at the time he made his statement in response to Sergeant Landacre's request that he take a portable breath test, Defendant's freedom of movement at that point was not curtailed to the degree associated with a formal arrest. He was told that he was not then under arrest. Defendant had not yet been placed under arrest and he was not handcuffed. Thus, Defendant was not in custody for purposes of Miranda. Berkemer v. McCarty (roadside questioning of motorist detained pursuant to routine traffic stop does not constitute custodial interrogation for purposes of Miranda rule). We note additionally that Defendant's statement predicting that he would test over the legal limit, was volunteered and was not the product of any interrogation or questioning by Sergeant Landacre. Her statement that she would arrest him if he didn't take the test might be coercive with respect to whether he submitted voluntarily, but it doesn't affect the voluntariness of the statement Defendant made. Also, Miranda warnings need not precede administration of a breathalyzer test because such a test is not testimonial in nature. State v. King (June 18, 1999), Clark App. No. 98CA97.
 {¶ 32} Because Defendant was not in custody for purposes of Miranda
until Sergeant Landacre arrested him for driving under the influence of alcohol, the prearrest statements that he volunteered in response to Sergeant Landacre's request that he take a portable breath test were admissible against him.
 {¶ 33} The third assignment of error is overruled. The judgment of the trial court will be affirmed.
Fain, J. and Donovan, J., concur.