OPINION
{¶ 1} Defendant Eric Winterbotham, appeals from his convictions on four counts of rape, R.C. 2907.02(A)(1)(b), and the five year sentence of imprisonment imposed for each offense, to be served consecutively, which were entered on Defendant's negotiated pleas of no contest after the trial court denied Defendant's motion to suppress evidence.
 {¶ 2} Based on leads that developed, Xenia police officers went to the apartment occupied by Defendant, by S.H., and by S.H.'s two young daughters, to investigate their suspicions that Defendant had taken nude photographs of S.H.'s daughters. S.H. denied any knowledge of that, but told officers that she had seen Defendant viewing child pornography on a computer. With S.H.'s permission, police seized the computer as well as a Polaroid camera owned by Defendant.
 {¶ 3} Defendant was also present when the officers came to the apartment. Captain Anger asked Defendant to come to the police station to answer questions, explaining that Defendant was not under arrest and would not be arrested because he refused. Defendant agreed, and drove to the police station in his own vehicle.
 {¶ 4} When they arrived at the police station, officers took Defendant through two locked doors of the building to an interview room. The door to the room was closed, but not locked. Detective Barlow demonstrated that the door was not locked, and told Defendant he was free to leave at any time.
 {¶ 5} When Detective Barlow asked Defendant if he knew why police wanted to talk with him, Defendant replied that it was probably because of the child pornography. Detective Barlow then questioned Defendant about the allegations that he took nude photographs of children. Defendant admitted viewing and sending child pornography on-line, and he also admitted taking nude photographs of S.H.'s children and fondling them. At that point, Detective Barlow stopped questioning Defendant and advised him of his Miranda rights. When Defendant then asked if he was being arrested, Detective Barlow replied "yes." Defendant continued talking with police after waiving his rights.
 {¶ 6} Some three hours after the first interview, when police had discovered that the first interview had not been recorded, Defendant was returned to the interview room from the jail and he was again read his Miranda rights, which he waived. A second interview was conducted that was videotaped.
 {¶ 7} Defendant was indicted on fourteen counts of rape of a child under ten years of age, a first degree felony carrying mandatory life imprisonment, R.C. 2907.02(A)(1)(b) and (B), and twenty counts of gross sexual imposition involving a child under thirteen years of age, a felony of the third degree. R.C.2907.05(A)(4) and (B). Defendant filed a motion to suppress his statements to police. Following a hearing the trial court overruled that motion.
 {¶ 8} Pursuant to a plea agreement, Defendant entered pleas of no contest to four counts of rape, absent any reference to the age of the victim. In addition, the parties stipulated to a twenty-year prison sentence. The trial court accepted Defendant's pleas and found him guilty. The trial court sentenced Defendant to consecutive five year prison terms on each of the four counts of rape, for a total of twenty years. The court dismissed all other charges.
 {¶ 9} Defendant timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR {¶ 10} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS COMPARABLE PORTIONS OF THE OHIO CONSTITUTION, THROUGH THE TRIAL COURT'S FAILURE TO SUPPRESS EVIDENCE GAINED AGAINST HIM IN VIOLATION OF HIS CONSTITUTIONAL RIGHTS."
 {¶ 11} In reviewing a trial court's decision on a motion to suppress, an appellate court is required to accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's conclusion, whether they meet the applicable legal standard.State v. Satterwhite (1997), 123 Ohio App.3d 322.
 {¶ 12} The facts found by the trial court are as follows:
 {¶ 13} "The testimony indicated that the police visited the Defendant at his residence regarding child pornography and requested the Defendant to come to the police department. The Defendant drove his own vehicle and voluntarily came to the police department where an interview was conducted. He was told he was not under arrest and voluntarily agreed to talk to the police. The Defendant's mere admission to possessing and/or viewing child pornography was not sufficient probable cause to arrest the Defendant in the absence of any other corroborating proof. When the Defendant mentioned fondling a child, the Defendant was immediately advised of his Miranda Rights and he gave his statement to police. Evidently due to some malfunction in the recording system, the interview was not recorded and some hours later he was brought back from the jail to the police station and advised of his Constitutional Rights and provided another statement to the police."
 {¶ 14} "A. STATEMENTS FROM THE FIRST INTERVIEW BEFORE MIRANDA WARNINGS WERE ADMINISTERED SHOULD HAVE BEEN SUPPRESSED."
 {¶ 15} Defendant argues that he was in custody for purposes of Miranda at all times during his first interview, including prior to the point at which questioning was stopped by Detective Barlow and Defendant was given Miranda warnings, after he admitted having sexual contact with S.H.'s two young daughters. Therefore, the inculpatory statements Defendant made before being Mirandized concerning viewing and transmitting child pornography on-line and taking nude photographs of S.H.'s daughters were inadmissible, absent Miranda warnings.
 {¶ 16} The procedural safeguards prescribed by Miranda
apply when persons are subjected to custodial interrogation.Miranda v. Arizona (1966), 384 U.S. 436, 444, 86 S.Ct. 1602,16 L.Ed.2d 694; State v. Hall (August 26, 2005), Greene App. No. 04-CA-86, 2005-Ohio-4526. Whether a person is in custody for purposes of Miranda depends on whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest. California v. Beheler (1983), 463 U.S. 1121,103 S.Ct. 3517, 77 L.Ed.2d 1275; Hall, supra. The relevant inquiry is how a reasonable person in the suspect's position would have understood his situation. Berkemer v. McCarty
(1984), 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317.
 {¶ 17} Defendant argues that because he was asked to come to the police station to answer questions and was escorted into the building by two officers through two sets of locked doors, and because there were two officers present in the interrogation room and the door was shut, a reasonable person in his situation would not have felt free to leave.
 {¶ 18} The trial court found that Defendant agreed to go to the police station to speak with police and drove there in his own vehicle. The evidence shows that when police asked Defendant to come to the station, they informed him at that time that he was not under arrest and would not be arrested if he refused to come. Once Defendant arrived at the police station he was not arrested, handcuffed or restrained in any particular way.
 {¶ 19} Although the door to the interview room was closed, Detective Barlow told Defendant that the door was not locked, and Barlow demonstrated for Defendant that the door was unlocked. Detective Barlow told Defendant that he was not under arrest and could leave at any time. Those explanations offset any implication that because he had been brought to the room through two locked doors, Defendant was in custody.
 {¶ 20} It was not until Defendant admitted having sexual contact with S.H.'s daughters that he was arrested and no longer free to leave the station. Detective Barlow immediately stopped questioning Defendant and advised him of his Miranda rights. Defendant indicated that he understood all of his rights and was willing to waive them and continue talking with police. After being advised of his rights, Defendant asked Detective Barlow if he was going to be arrested and Barlow replied, "yes." Nevertheless, Defendant indicated that he would continue talking with police, which he did.
 {¶ 21} Up to the point in time when Defendant admitted fondling S.H.'s daughters, police had not arrested him and he was not restrained to a degree associated with a formal arrest. He was therefore not in custody for purposes of Miranda until that time. We do not agree with Defendant's argument that prior to his admissions police had probable cause to arrest Defendant or that, if they had probable cause, that makes any difference in deciding that Defendant was in custody. On that point, the suspect's state of mind is the key, and that must be determined in relation to arrest or custody, not probable cause to arrest. On this record,Miranda warnings were not required, and Defendant's inculpatory statements about child pornography and taking nude photographs of S.H.'s daughters were admissible absent prior Miranda warnings. The trial court correctly refused to suppress those statements.
 {¶ 22} "B. STATEMENTS FROM THE FIRST INTERVIEW MADE AFTER MIRANDA WARNINGS WERE GIVEN, SHOULD HAVE BEEN SUPPRESSED."
 {¶ 23} Defendant argues that the statements he made to police even after being advised of his Miranda rights should be suppressed because police employed an interrogation technique condemned by the United States Supreme Court in Missouri v.Seibert (2004), 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643.
 {¶ 24} In Seibert, during one nearly continuous interrogation, police deliberately employed a "question first, warn later" strategy, effectively dividing the interrogation into two parts. First, police questioned Defendant who was in custody until they had obtained a confession, deliberately withholding Miranda warnings. After a brief break, the same officer then advised defendant of her Miranda rights and obtained a signed waiver, and then continued questioning defendant, confronting her with her pre-warning statements until defendant repeated her earlier confession. Under those circumstances, the Supreme Court upheld the suppression of the second confession because giving the Miranda warnings midway through the interrogation session, after a confession, was ineffective to fulfill their purpose.Id., at 609-613. The Ohio Supreme Court more recently followed and applied Seibert in State v. Farris 109 Ohio St.3d 519,2006-Ohio-3255.
 {¶ 25} As we previously discussed, and unlike in Seibert andFarris, Defendant was not in custody for purposes of Miranda
when he gave his initial inculpatory statements to Detective Barlow before being Mirandized. See: State v. Biros,78 Ohio St.3d 426, 1997-Ohio-204. It was not until Defendant admitted that he fondled S.H.'s daughters that police then decided to arrest Defendant and he was no longer free to leave the police station, at which time police immediately stopped questioning Defendant and advised him of his Miranda rights. Up until that time, Miranda warnings were not required. Therefore, Seibert
is not applicable to such a situation. State v. Estes (October 17, 2005), Preble App. No. CA2005-02-001, 2005-Ohio-5478.
 {¶ 26} "C. STATEMENTS APPELLANT WAS TRICKED INTO MAKING AFTER THE FIRST INTERVIEW SHOULD HAVE BEEN SUPPRESSED."
 {¶ 27} Defendant argues that the statements he made to police during the second interview, after he was again advised of his rights, indicated he understood them, and agreed to waive them and speak with police, should be suppressed because they are fruit of the poisonous tree; the illegally obtained statements he made during his first interview which effectively "let the cat out of the bag." However, the psychological impact of a voluntary disclosure does not qualify as state compulsion or compromise the voluntariness of a subsequent informed waiver. Oregon v. Elstad
(1985), 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222. Because we have previously concluded that the statements Defendant made during his first interview, both before and after being advised of his Miranda rights were properly obtained and did not violate his constitutional rights, this argument is unavailing.
 {¶ 28} Defendant additionally argues that the statements he made to police during his second interview should be suppressed because they were obtained through deceit and trickery and were therefore involuntary. In that regard the record demonstrates that Detective Barlow told Defendant that the reason he needed to do a second interview was "to clarify some things for the counselors, you know, for the kids." Defendant claims that this statement by Detective Barlow, implying that a second interview would assist S.H.'s daughters with counseling they would undergo as a result of Defendant's sexual misconduct, was untrue. The real reason Detective Barlow wanted to conduct a second interview was because the first interview had inadvertently not been tape recorded. Therefore, Defendant argues, Barlow's trickery rendered Defendant's waiver of his rights and his subsequent statements involuntary. We disagree.
 {¶ 29} In State v. Goodspeed (April 9, 2004), Montgomery App. No. 19979, 2004-Ohio-1819, this court stated:
 {¶ 30} "In order for a statement made by the accused to be admitted in evidence, the prosecution must prove that the accused effected a voluntary, knowing, and intelligent waiver of hisFifth Amendment right against self-incrimination. State v.Edwards (1976), 49 Ohio St.2d 31, 38 (citing Miranda v.Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602) The test for voluntariness under a Fifth Amendment analysis is whether or not the accused's statement was the product of police overreaching: "`The Fifth Amendment privilege is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion. The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word.' State v. Dailey (1990), 53 Ohio St.3d 88, 92,559 N.E.2d 459 (citing Moran v. Burbine (1986), 475 U.S. 412, 421,106 S.Ct. 1135). "In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement.Edwards, 49 Ohio St.3d at paragraph two of the syllabus; seeState v. Brewer (1990), 48 Ohio St.3d 50, 58, 549 N.E.2d 491.
 {¶ 31} "The totality of the circumstances analysis is triggered by evidence of police coercion. Clark, supra at 261,527 N.E.2d 844. `[C]oercive police activity is a necessary predicate to the finding' that a suspect involuntarily waived hisMiranda rights and involuntarily confessed. Connelly,479 U.S. at 167, 107 S.Ct. at 522, 93 L.Ed.2d at 484. A suspect's decision to waive his Miranda rights and to make a confession are made voluntarily absent evidence that `his will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct.' Colorado v. Spring (1987),479 U.S. 564, 574, 107 S.Ct. 851, 857, 93 L.Ed.2d 954, 966;Moore, supra at 32, 689 N.E.2d 1; State v. Dailey (1990),53 Ohio St.3d 88, 91, 559 N.E.2d 459." Id., at ¶ 27.
 {¶ 32} Even accepting as true that Detective Barlow misled Defendant about why he wanted to conduct a second interview, that does not necessarily make Defendant's subsequent statements involuntary. The use of deceit is merely one factor bearing on voluntariness. State v. Cooey (1989), 46 Ohio St.3d 20. Furthermore, coercive police conduct is a necessary predicate to a finding of involuntariness. Goodspeed, supra; Cooey, supra.
That includes such tactics as physical abuse, threats, or deprivation of food, medical treatment, or sleep. None of those things are present in this case.
 {¶ 33} Before conducting a second interview of Defendant, which occurred just three hours after the first interview, Detective Barlow again advised Defendant of his Miranda rights and Defendant indicated that he understood his rights and was willing to waive them and speak with police. Defendant signed a written waiver of rights, which is strong proof of the validity of his waiver. Goodspeed, supra; North Carolina v. Butler
(1979), 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286. There is no evidence demonstrating that Defendant did not understand his rights or that he was subjected to coercive police activity.
 {¶ 34} Detective Barlow's single, unrepeated statement to Defendant implying that the reason he wanted to conduct a second interview with Defendant was to benefit the counseling S.H.'s daughters received because of Defendant's misconduct is simply not the type of inducement or coercive activity that has the capacity to fatally undermine Defendant's own capacity for rational calculation in deciding to waive his Fifth Amendment rights. Compare State v. Pettijean (2000),140 Ohio App. 3d 517. On this record, there is no evidence of police overreaching to the extent that Defendant's will was overborne by the circumstances surrounding the giving of his confession, and his capacity for self-determination was not critically impaired because of coercive police conduct. Goodspeed, supra; Pettijean,supra; Colorado v. Spring (1987), 479 U.S. 564, 107 S.Ct. 851,93 L.Ed.2d 954. Therefore, Defendant's decision to waive hisMiranda rights and make incriminating statements during the second interview was voluntary, Goodspeed, and the trial court properly refused to suppress that evidence.
 {¶ 35} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR {¶ 36} "APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE SIXTH ANDFOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AS WELL AS COMPARABLE PORTIONS OF THE OHIO CONSTITUTION."
 {¶ 37} In order to demonstrate ineffective assistance of trial counsel a Defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 38} A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.Strickland, supra, at 697; Bradley, supra, at 143; State v.Scott (May 7, 1992), Cuyahoga App. No. 60535. If an ineffective claim is more readily rejected for lack of sufficient prejudice, that alternative should be followed. Id.
 {¶ 39} When police went to S.H.'s residence to investigate allegations of child pornography involving nude photographs of S.H.'s daughters, they seized S.H.'s computer, with her permission, in order to analyze its contents for child pornography because S.H. told police that she had seen Defendant looking at child pornography on that computer. Police also seized a Polaroid camera that belonged to Defendant. Although police had S.H.'s permission to take the camera, they did not have Defendant's permission. Defendant argues that his trial counsel performed deficiently because, although he filed a motion to suppress Defendant's statements to police, he did not seek suppression of any evidence police recovered from the camera that they illegally seized.
 {¶ 40} A plea of guilty or no contest waives any prejudice a defendant suffers arising out of his counsel's alleged ineffective assistance, except with respect to a claim that the particular failure alleged impaired the defendant's knowing and intelligent waiver of his right to a trial. State v. Barnett
(1991), 73 Ohio App.3d 244. Defendant does not claim that counsel's failure to seek suppression of the Polaroid Camera, whatever its evidentiary value may have been, impaired the knowing and voluntary character of his no contest pleas, about which Defendant does not complain. Therefore, lacking the showing of prejudice required by Strickland and Bradley, Defendant's claim of ineffective assistance of counsel must be rejected.
 {¶ 41} The second assignment of error is overruled. The judgment of the trial court will be affirmed.
Wolff, J. And Fain, J., concur.