OPINION
{¶ 1} Defendant-Appellant, Charles Duncan, appeals a judgment of the Clark County Common Pleas Court finding him guilty of one count of Murder, one count of Reckless Homicide, and two firearm specifications, and sentencing him to life in prison with parole eligibility after serving fifteen years plus one year on the firearm *Page 2 
specification, to be served consecutively. Duncan asserts that the trial court erred in denying his suppression motion and in denying his Crim.R. 29 motion on the felony-murder charge, and that his convictions on both charges are contrary to the manifest weight of the evidence. Finding that there was no error in the trial court's denial of the suppression motion, that there was sufficient evidence to convict the appellant of the felony-murder charge, and that neither conviction was contrary to the manifest weight of the evidence, we affirm the judgment of the trial court.
 {¶ 2} In the early evening hours of May 6, 2006, Charles Duncan shot his live-in girlfriend of nine years, Bobbi Jo Pyles. Pyles subsequently died of the gunshot wound. Duncan was taken into custody by the Springfield Police Department at his home at about 10:00 p.m. and transported to Police Headquarters, where he was placed in a holding cell. He was subsequently removed to an interview room where he unequivocally invoked his right to counsel. Thereupon the detectives immediately ceased questioning Duncan and returned him to his holding cell.
 {¶ 3} Over the next approximately four hours, Duncan remained in the holding cell while the detectives obtained and executed a search warrant for Duncan's home. At approximately 2:15 a.m., the detectives informed Duncan that Pyles had died. Shortly thereafter, Duncan told the detectives that he wanted to make a statement.
 {¶ 4} Duncan was again moved to the interview room where he was re-Mirandized. Duncan signed the waiver of rights form and told the detectives that he wanted an attorney, but that he wanted to make a statement. Thereafter Duncan spontaneously told the officers that he accidentally shot Pyles.
 {¶ 5} Duncan was subsequently indicted on two counts of murder, both with *Page 3 
specifications that he had a firearm on or about his person or under his control while committing the offense. Count one alleged murder of Bobbi Jo Pyles, in violation of R.C. 2903.02(A). Count two alleged murder as the proximate result of committing or attempting to commit felonious assault, in violation of R.C. 2903.02(B). Duncan filed a motion to suppress any statements on the basis that they were made after he had asserted his right to counsel. This motion was overruled by the trial court.
 {¶ 6} Thereafter, Duncan was tried by a jury. At the close of the state's evidence, Duncan moved for a directed verdict of acquittal pursuant to Crim.R. 29, which was renewed at the close of all of the evidence. The court overruled both motions, and after deliberations, the jury returned a guilty verdict on the second count (felony-murder) and a guilty verdict on the lesser-included offense of Reckless Homicide on the first count. They also found Duncan guilty of both gun specifications.
 {¶ 7} Duncan was subsequently sentenced on the felony-murder conviction to a term of life imprisonment with parole eligibility after fifteen years, and he was sentenced to a one-year consecutive sentence on the gun specification.
 {¶ 8} It is from this judgment that Duncan appeals, presenting four assignments of error for our review.
 First Assignment of Error {¶ 9} "There was error in the lower court in overruling Defendant's motion to suppress his statement and the taped interview in that Defendant did not make a knowing voluntary and intelligent waiver of his constitutional rights."
 Second Assignment of Error {¶ 10} "There was error in the lower court in overruling Defendant's motion to *Page 4 
suppress his statement, given after Defendant requested a lawyer, thereby denying him right to counsel guaranteed by the fifth and sixth amendment to the Constitution of the United States and Article One
Section 10 of the Ohio Constitution."
 {¶ 11} In these assignments, Duncan argues first that the waiver of his Miranda rights was not voluntary, and second, that prior to the second interview and after his Miranda waiver, he still manifested a desire to have an attorney present prior to making a statement.
 {¶ 12} The standard of review regarding motions to suppress is whether the trial court's findings are supported by competent, credible evidence. State v. Vance (1994), 98 Ohio App.3d 56, 58-59,647 N.E.2d 851; State v. Ferguson, Defiance App. No. 4-01-34, 2002-Ohio-1763. "At a suppression hearing, the evaluation of evidence and the credibility of witnesses are issues for the trier of fact." State v. Mills (1992),62 Ohio St.3d 357, 366, 582 N.E.2d 972. However, an appellate court makes an independent determination of the law as applied to the facts.Vance, 98 Ohio App.3d at 59.
 {¶ 13} In its findings of facts, the trial court found that "the defendant unequivocally invoked his right to an attorney prior to the [first] interview * * * [and] the detectives immediately ceased questioning and returned the defendant to the holding cell." The trial court further found that prior to the second interview, "which the defendant was responsible for initiating * * * he * * * signed a waiver form after being re-advised of his rights." Finally, the trial court found that after this waiver, "the defendant was not clear that he wanted an attorney present prior to making a statement. He simply began making a statement without counsel." *Page 5 
 {¶ 14} A review of the record confirms that there is sufficient competent credible evidence from which the trial court could make these findings of fact.
 {¶ 15} In order for a statement made by the accused to be admitted in evidence, the state must prove that the he made a voluntary, knowing, and intelligent waiver of his Fifth Amendment right against self-incrimination. State v. Edwards (1976), 49 Ohio St.2d 31, 38,358 N.E.2d 1051, reversed on other grounds (1978), 438 U.S. 911,98 S.Ct. 3147, 57 L.Ed.2d 1155; State v. Winterbotham, Greene App. No. 05CA100,2006-Ohio-3989, ¶ 30. In deciding whether a defendant's confession is involuntarily induced, the court should consider the totality of the circumstances, including the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement. State v. Brewer (1990),48 Ohio St.3d 50, 58, 549 N.E.2d 491; Winterbotham, supra; State v.Connors-Camp, Montgomery App. No. 20850, 2006-Ohio-409, ¶ 35.
 {¶ 16} Duncan asserts that the state failed to provide an attorney for him when he unequivocally asserted his right to counsel; that thereafter he was placed into a dark holding cell for four hours, which constituted physical deprivation; that the police first advised him that Bobbi Jo had "made it" and then later informed him that she had died; and that the police initiated the subsequent interview by asking Duncan whether he then wished to make a statement. However, the trial court made findings of fact that Duncan initiated the subsequent interview, not the police. The testimony of Detective DeWine supports this finding. Also, the only evidence that the police first told Duncan that Bobbie Jo had made it was from Duncan himself, and this is contrary *Page 6 
to the testimony of Detective DeWine. Apparently the trial court chose to believe Detective DeWine in this respect as well. Furthermore, merely holding a suspect in a holding cell at police headquarters for four hours during the night absent any other factors, does not constitute physical deprivation or mistreatment.
 {¶ 17} Because we review the voluntariness of a Miranda waiver de novo, we must independently determine whether the totality of the circumstances surrounding the confession indicates that a defendant's "will was overborne and his capacity for self-determination was critically impaired because of coercive police conduct." State v.Otte (1996), 74 Ohio St.3d 555, 562, 660 N.E.2d 711, citing Colorado v.Connelly (1986), 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 andState v. Dailey (1990), 53 Ohio St.3d 88, 559 N.E.2d 459, paragraph two of the syllabus. Given the facts of this case, we cannot say Duncan's written and recorded waiver of his Miranda rights and his subsequent statements were the result of coercion and duress. Instead, the totality of the circumstances supports the conclusion that Duncan made these statements on his own accord.
 {¶ 18} Second, Duncan asserts that, after he executed the waiver of his Miranda rights, he thereafter again unequivocally manifested a desire to have a lawyer present before making his statement. This claim is however belied by the tape-recorded interview.
 {¶ 19} Duncan focuses on the a colloquy between himself and Detective Estep where in response to Estep's question whether Duncan wanted to now talk to them without a lawyer, Duncan answered: "no. I want a lawyer first * * *." However, in considering this evidence, we must look at the entire conversation and what occurred *Page 7 
thereafter. After Detectives DeWine and Estep gave Duncan his rights and he signed the waiver form, the following conversation occurred:
 {¶ 20} "THE DEFENDANT: I want to tell you guys exactly what happened.
 {¶ 21} "DETECTIVE ESTEP: We'll just — you understand your rights.
 {¶ 22} "THE DEFENDANT: I understand them.
 {¶ 23} "DETECTIVE ESTEP: Okay. And you did — you did say you wanted a lawyer, but you're — you're saying now you do not want one. And you want to talk to us.
 {¶ 24} "THE DEFENDANT: No. I want a lawyer first, but I want to make a statement. Well, never mind. There ain't nothing going to help me now. I'm going to-(Inaudible.)
 {¶ 25} "DETECTIVE ESTEP: I mean, is — you're going to be charged, yeah. I mean, there's no-
 {¶ 26} "THE DEFENDANT: So I'm going to prison — or jail tonight?
 {¶ 27} "DETECTIVE ESTEP: We don't — without talking to you, we have no idea what — what went on out there. I mean-
 {¶ 28} "THE DEFENDANT: I can't believe I'm sitting here.
 {¶ 29} "DETECTIVE ESTEP: But you're — you've already messed us all up again. You said you wanted a lawyer anymore. I — I don't want what you want.
 {¶ 30} "THE DEFENDANT: I can't even believe I'm — I'm just sitting here talking to you guys. We were a loving family earlier today.
 {¶ 31} "DETECTIVE ESTEP: I understand that.
 {¶ 32} "THE DEFENDANT: And now all this shit happened, and she's gone. I *Page 8 
don't — I want to make a statement.
 {¶ 33} "DETECTIVE DEWINE: Okay. Well, if you want to make a statement, we'll just let you, you know, just tell us what you want to tell us. Then we'll go from there. All right?
 {¶ 34} "THE DEFENDANT: All right.
 {¶ 35} "DETECTIVE DEWINE: All right."
 {¶ 36} Thereafter, Duncan went into a narrative as to the events of the evening, stating that he pulled the trigger of the gun, shooting Ms. Pyles, but claiming that it was an accident.
 {¶ 37} Viewing this evidence in the context of its totality, Duncan made his statement knowingly, understandingly and voluntarily, and he did not unequivocally manifest a desire to have an attorney present prior to making the statements.
 {¶ 38} Duncan's first and second assignments of error are overruled.
 Third Assignment of Error {¶ 39} "The lower court erred in overruling Defendant's motion for acquittal pursuant to Rule 29 as to count 2 — felony murder — and there was further error in that the verdict as to that count was against the manifest weight of the evidence."
 {¶ 40} Duncan asserts in his third assignment of error that the trial court erred in not entering a judgment of acquittal at the close of the state's evidence on count two of the indictment. The standard for reviewing a motion for acquittal pursuant to Crim.R. 29(A) was set forth in State v. Bridgeman (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus: "* * * [A] court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each *Page 9 
material element of a crime has been proved beyond a reasonable doubt." In other words, if there is sufficient evidence before the trier of fact that could result in a finding of guilty, then the motion must be denied.
 {¶ 41} Duncan also claims that his conviction on this count was against the manifest weight of the evidence. Because, "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different", we will address those concepts separately. State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, paragraph two of the syllabus.
 {¶ 42} We first address Duncan's claim that the evidence was insufficient to support the finding that he was guilty beyond a reasonable doubt. An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 43} Duncan was charged in the second count of the indictment with committing murder, under R.C. 2903.02(B). The essential elements of this offense that the state had to prove were that Duncan caused the death of Bobbi Jo Pyles as the proximate result of causing or attempting to cause physical harm to Bobbie Jo Pyles by means of a deadly weapon.
 {¶ 44} Duncan's argument in this regard is that there is no evidence that he intended to cause harm to Bobbi Jo Pyles, and that the only evidence before the trier of fact was that the shooting was accidental. This argument is based upon the *Page 10 
statements of Duncan that it was an accident and the 9-1-1 call where a female caller says the shooting was accidental.
 {¶ 45} However, any fact may be proved by circumstantial evidence as well as by direct evidence. And, each is accepted as a reasonable method of proof of any fact. In reviewing the evidence, there is a substantial body of circumstantial evidence from which a reasonable trier of fact could infer that Duncan's act of shooting Pyles was not accidental and was done in anger.
 {¶ 46} There was an ongoing argument between Duncan and Pyles during the day of the shooting. There were very recent bruises on the body of the victim that the jury could have inferred had come from a physical altercation between the two in the laundry room shortly prior to the shooting. Also, the victim's deathbed statement at the hospital, contrary to the 9-1-1 call, did not indicate that the shooting was accidental, and it could reasonably be inferred to manifest that she knew she had been deliberately shot, but that the argument that led to her shooting was her fault. The physical evidence developed from the crime scene, the distance from which the shot was fired, and the trajectory of the bullet do not comport with Duncan's initial statements to the police. The gun used did not have a "hair trigger" as Duncan claimed, and Duncan was experienced in the use of firearms. Finally, Duncan did not call 9-1-1 immediately after the shooting to seek assistance for his girlfriend's wounds.
 {¶ 47} Viewing this testimony in a light most favorable to the prosecution, we conclude that the evidence was sufficient for a rational trier of fact to have found, beyond a reasonable doubt that Duncan caused the death of Bobbi Jo Pyles as the proximate result of causing or attempting to cause physical harm to her by means of a *Page 11 
deadly weapon. Therefore, the trial court did not err in overruling Duncan's motion for acquittal pursuant to Crim.R. 29.
 {¶ 48} Furthermore, after having reviewed the entire record and having considered all of the conflicting evidence, we cannot say that the jury clearly lost its way in finding that Duncan caused the death of Pyles as the proximate result of causing or attempting to cause physical harm to her by means of a deadly weapon.
 {¶ 49} Duncan's third assignment of error is overruled.
 Fourth Assignment of Error {¶ 50} "There was error in the lower court in that the verdict of reckless homicide returned by the jury was against the manifest weight of the evidence."
 {¶ 51} In this assignment, Duncan argues that there was no evidence that he "recklessly" caused the death of Bobbi Jo Pyles.
 {¶ 52} The trial court gave the following jury instruction on recklessness, which was the mens rea for reckless homicide, a lesser-included offense of murder (Count one).
 {¶ 53} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result.
 {¶ 54} "A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.
 {¶ 55} "Risk means significant possibility, as contrasted with a remote possibility, that a certain result may occur." *Page 12 
 {¶ 56} Based on the previously recited evidence with regards to the felony-murder count, we find that the jury's conclusion that Appellant acted knowingly and recklessly when he injured and ultimately killed Pyles was not against the manifest weight of the evidence. The uncontroverted testimony showed that Duncan was experienced with guns; he knew how to handle them. Surely the jury could have inferred that the mere pointing of a loaded gun, with the safety off, in the direction of another person constituted reckless behavior. Accordingly, Duncan's argument in this respect is not well taken.
 {¶ 57} For the foregoing reasons, the judgment of the Clark County Common Pleas Court is hereby affirmed.
BROGAN, J. and GRADY, J., concur.
(Hon. Sumner E. Walters retired from the Third District Court of Appeals sitting by assignment of the Chief Justice of the Supreme Court of Ohio). *Page 1